IN RE Steven LIPSKY, Relator

NO. 13–0928

Supreme Court of Texas.

Argued December 4, 2014

Opinion Delivered: April 24, 2015

Matthew J. Kita, Michael G. Guajardo, Guajardo & Marks, LLP, Dallas, Peter M. Kelly, Kelly, Durham & Pittard, L.L.P., Houston Amicus Curiae, for The Texas Trial Lawyers Association

Andrew D. Sims, Russell R. Barton, Troy Douglas Okruhlik, Harris Finley & Bogle, P.C., Elizabeth Fitch, John H. Cayce Jr., Kelly Hart & Hallman LLP, Fort Worth, for Range Resources Corporation and Range Production Co.

Donald E. Godwin, George Read Carlton Jr., Shawn Malcolm McCaskill, Godwin Lewis, P.C., Dallas, for Alisa Rich

Alicia Calzada, Haynes & Boone, LLP, San Antonio, Allen M. Stewart, Allen Stewart, P.C., Brent M. Rosenthal, Rosenthal Weiner LLP, Dallas, James R. Claunch, The Claunch Law Firm, Kirk Matthew Claunch, Fort Worth, Joseph David Sibley IV, Camara & Sibley LLP, Houston, Laura Lee Prather, Haynes and Boone, LLP, Austin, for Steven Lipsky

Justice Devine delivered the opinion of the Court.

The Texas Citizens Participation Act (TCPA)[1] protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them. Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. The protection consists of a special motion for an expedited consideration of any suit that appears to stifle the defendant's communication on a matter of public concern. *Id.* § 27.003. In reviewing that motion, the trial court is directed to dismiss the suit unless "clear and specific evidence" establishes the plaintiffs' "prima facie case." *Id.* § 27.005(c). When applying the Act's requirement for clear and specific evidence, however, the courts of appeals disagree about the role of circumstantial evidence.

Some courts hold that only direct evidence is relevant when considering a motion to dismiss under the Act, while others have concluded that relevant circumstantial evidence must also be considered. The court of appeals here considered circumstantial evidence, and we agree that clear and specific evidence under the Act includes relevant circumstantial evidence. 411 S.W.3d 530, 546 (Tex.App.–Fort Worth 2013). We further agree, generally, with the court of appeals's disposition of the proceedings below and accordingly deny all relief requested here.

## I. Background and Procedural History

Steven and Shyla Lipsky own several acres in Weatherford, Texas. In 2005 they drilled a well on their property to a depth of about two hundred feet to provide water to a cabin and boathouse. In 2009 they finished a house on the property, connecting the well to their new home. That same year, Range Resources Corporation and Range Production Company drilled two gas wells about a half-mile from the Lipskys' property.

A few months after moving into their new home, the Lipskys experienced mechanical problems with their well. They contacted a well-servicing company, which identified the problem as "gas locking," a condition typically associated with an excess of natural gas in the ground water. A submersible pump's ability to transport water from a well can be affected when too much gas is in the water.

---

1. *See* Act of May 18, 2011, 82nd Leg., R.S., ch. 341, § 1, 2011 Tex. Gen. Laws 961 (stating that "Act may be cited as the Citizens Participation Act").

Concerned about the gas in their well water, the Lipskys contacted local health officials who referred them to Alisa Rich, an environmental consultant with Wolf Eagle Environmental. After tests, Rich confirmed the presence of methane and other gases in the well. About this time, Lipsky made a video of himself lighting gas escaping from a garden hose attached to his well. To produce this effect, Lipsky connected the hose to a vent on his water well. He shared his video with the Environmental Protection Agency (EPA) and the media, which reported on the flammable nature of Lipsky's water well. He also complained about the gas in his well to the Texas Railroad Commission. Lipsky's own investigation led him to believe that Range, the oil and gas operator closest to his property, had some responsibility for contaminating his ground water.

Both the EPA and Railroad Commission began investigating Lipsky's complaints. The EPA initially concluded that Range's production activities had contributed to the gas in the Lipskys' well water and that the situation could be hazardous to health and safety. The federal agency ordered Range to provide the Lipskys potable water and to install explosivity meters at their property.

The Railroad Commission completed its investigation a few months later. Although invited to participate in the Commission's evidentiary hearing, the Lipskys declined. The Commission thereafter concluded that Range's operations in the area were not the source of the contamination. Lipsky immediately denounced the Rail-

road Commission's decision in the media and continued to blame Range, pointing to the EPA's action and his expert's opinions.

The Lipskys thereafter sued Range and others involved in developing their residential area. As to Range, they alleged that its fracking operations near their property were negligent, grossly negligent, and a nuisance. They asserted that Range's operations contaminated their water well, causing the water to become flammable and their home uninhabitable. Range answered the suit and moved to dismiss all claims as an improper collateral attack on the Railroad Commission's ruling. Range also filed a counterclaim against the Lipskys and a third-party claim against Rich (the Lipskys' environmental consultant) alleging defamation, business disparagement, and a civil conspiracy. The Lipskys and Rich responded by moving to dismiss Range's counter-attack as an improper attempt to suppress their First Amendment rights guaranteed under the Constitution and protected by the Texas Citizens Participation Act. TEX. CIV. PRAC. & REM. CODE § 27.005.

The trial court granted Range's motion to dismiss, agreeing that the Lipskys' claims were an improper collateral attack on the Commission's determination. The court also declined to dismiss Range's claims against the Lipskys and Rich by denying their motions to dismiss under the Texas Citizens Participation Act. The Lipskys and Rich attempted an interlocutory appeal from this latter ruling, but the court of appeals dismissed the appeal for want of jurisdiction.[2] *See Lipsky v. Range*

---

**2.** At the time, the courts of appeals disagreed about whether the Texas Citizens Participation Act granted an interlocutory appeal from a signed order denying dismissal. *Compare Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 524–29 (Tex.App.–Fort Worth 2012, pet. denied) (rejecting interlocu-

tory appeal), *with San Jacinto Title Servs. of Corpus Christi, LLC. v. Kingsley Props., LP.*, 452 S.W.3d 343, 349 (Tex.App.–Corpus Christi 2013, pet. denied) (accepting interlocutory appeal); *see also* Justice Nora Longoria & Nathaniel Beal, *"What Is A SLAPP Case?" Interlocutory Appeals and the Texas Citizens'*

*Prod. Co.*, No. 02–12–00098–CV, 2012 WL 3600014, at *1 (Tex.App.–Fort Worth Aug. 23, 2012, pet. denied) (mem. op.). The court, however, allowed the challenge to proceed as an original proceeding. 411 S.W.3d at 536. Meanwhile, the EPA withdrew its administrative order against Range without explanation. *See* Joint Stipulation of Dismissal Without Prejudice, *United States v. Range Prod. Co.*, No. 3:11–CV–00116–F (N.D.Tex. Mar. 30, 2012).

The court of appeals thereafter determined that the Texas Citizens Participation Act required the dismissal of Range's claims against Lipsky's wife, Shyla, and his environmental consultant, Rich, and that the trial court had accordingly abused its discretion in not dismissing those claims. 411 S.W.3d at 554. The court further determined that the TCPA did not similarly require dismissal of all of Range's claims against Lipsky.[3] *Id.* at 546. The court of appeals granted mandamus relief to Lipsky's wife and consultant, while denying similar relief to Lipsky, prompting both Lipsky and Range to seek mandamus relief in this Court. In their respective petitions, Lipsky argues that the TCPA required the trial court to dismiss all claims against him also, while Range argues that the TCPA did not re-

quire the dismissal of any claims. The Lipsky petition accordingly concludes that the trial court abused its discretion in failing to grant his TCPA motion. The Range petition, on the other hand, concludes that the court of appeals abused its discretion in granting mandamus relief to Lipsky's wife, his environmental consultant, and Lipsky himself (in part) because the TCPA did not require it.

## II. The Texas Citizens Participation Act

As already mentioned, the Texas Citizens Participation Act or TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *See* House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011). The Act provides a special procedure for the expedited dismissal of such suits. A two-step process is initiated by motion of a defendant who believes that the lawsuit responds to the defendant's valid exercise of First Amendment rights. Under the first step, the burden is initially on the defendant-movant to show "by a preponderance of the evidence" that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech;[4] (2) the right to petition;[5] or (3) the right of association."[6]

---

*Participation Act*, 26 APP. ADVOC. 390, 395–96 (2014). The Legislature has since clarified that an interlocutory appeal is permitted from any interlocutory order denying a motion to dismiss under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12); *see also Miller Weisbrod, L.L.P. v. Llamas-Soforo*, —— S.W.3d ——, ——, 2014 WL 6679122, at *6 (Tex. App.–El Paso 2014, no pet.). Although an interlocutory appeal is clearly the appropriate remedy going forward, we nevertheless consider the issues presented here in the context of the original mandamus proceedings filed in this Court.

3. The court of appeals concluded that the trial court should have dismissed the civil conspir-

acy and aiding and abetting claims against all defendants, including Steven Lipsky. *Id.* at 551–52.

4. The "right of free speech" refers to communications related to "a matter of public concern" which is defined to include an issue related to: "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(3), (7)(A)–(E).

5. The "right to petition" refers to a wide range of communications relating to judicial,

Tex. Civ. Prac. & Rem. Code § 27.005(b). If the movant is able to demonstrate that the plaintiff's claim implicates one of these rights, the second step shifts the burden to the plaintiff to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

In determining whether the plaintiff's claim should be dismissed, the court is to consider the pleadings and any supporting and opposing affidavits. *Id.* § 27.006(a). Moreover, the motion to dismiss ordinarily suspends discovery, *id.* § 27.003(c), although the statute leaves the possibility for a court to order limited discovery for "good cause" as it relates to the motion itself, *id.* § 27.006(b). Within defined time limits, the court must then rule on the motion and must dismiss the plaintiff's claim if the defendant's constitutional rights are implicated and the plaintiff has not met the required showing of a prima facie case. *Id.* § 27.005. The determination is to be made promptly, ordinarily within 150 days of service of the underlying legal action. *See id.* §§ 27.003(b), .004(a), .005(a).

In this proceeding, only the second step is at issue—the question being whether the plaintiff has met its burden of "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). The parties disagree about the evidentiary burden this language imposes. Lipsky argues that the phrase "clear and specific evidence" elevates the evidentiary standard, requiring Range to produce direct evidence as to each element of its claim. Range, on the other hand, argues that circumstantial evidence and rational infer-

ences may be considered by the court in determining whether clear and specific evidence exists and that the TCPA's prima-facie-case requirement does not impose a higher or unique evidentiary standard. The dispute mirrors a similar disagreement among the courts of appeals.

Some courts, focusing on the requirement of "clear and specific evidence," have interpreted the statute to require a heightened evidentiary standard, unaided by inferences. *See Shipp v. Malouf*, 439 S.W.3d 432, 439 (Tex.App.–Dallas 2014, pet. denied); *Young v. Krantz*, 434 S.W.3d 335, 342–43 (Tex.App.–Dallas 2014, no pet.); *KBMT Operating Co. v. Toledo*, 434 S.W.3d 276, 282 (Tex.App.–Beaumont 2014, pet. granted); *Farias v. Garza*, 426 S.W.3d 808, 814 (Tex.App.–San Antonio 2014, pet. filed); *Rio Grande H2O Guardian v. Robert Muller Family P'ship, Ltd.*, No. 04–13–00441–cv, 2014 WL 309776, at *2 (Tex.App.–San Antonio Jan. 29, 2014, no pet.) (mem. op.); *Sierra Club v. Andrews Cnty., Tex.*, 418 S.W.3d 711, 715 (Tex. App.–El Paso 2013, pet. filed); *Alphonso v. Deshotel*, 417 S.W.3d 194, 198 (Tex.App.–El Paso 2013, no pet.); *Fitzmaurice v. Jones*, 417 S.W.3d 627, 632 (Tex.App.–Houston [14th Dist.] 2013, no pet.); *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex.App.–Houston [14th Dist.] 2013, pet. denied). Implicit in these decisions is the assumption that circumstantial evidence is not sufficiently "clear and specific" to satisfy the statutory burden. Other courts, focusing on the prima-facie-case language, have concluded that the statute permits the court to draw rational inferences from circumstantial evidence when determining whether the plaintiff has met its threshold factual burden. *See Schimmel*

administrative, or other governmental proceedings. *Id.* § 27.001(4).

6. The "right of association" refers to people "collectively express[ing], promot[ing], pursu[ing], or defend[ing] common interests." *Id.* § 27.001(2).

*v. McGregor*, 438 S.W.3d 847, 855 (Tex. App.–Houston [1st Dist.] 2014, pet. denied); *Combined Law Enforcement Ass'ns of Tex. v. Sheffield*, No. 03–13–00105–CV, 2014 WL 411672, at *10 (Tex.App.–Austin Jan. 31, 2014, pet. filed) (mem.op.); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.–Houston [1st Dist.] 2013, pet. denied); *In re Lipsky*, 411 S.W.3d at 539.

The statute does not define "clear and specific evidence," but the courts that have interpreted the phrase to impose a heightened evidentiary standard have purportedly found support in the case law. Those courts invariably rely on two cases predating the Act for the proposition that "clear and specific evidence" means "evidence unaided by presumptions, inferences or intendments." *See, e.g., Sierra Club*, 418 S.W.3d at 715 (citing *McDonald v. Clemens*, 464 S.W.2d 450, 456 (Tex.Civ.App.–Tyler 1971, no writ) and *S. Cantu & Son v. Ramirez*, 101 S.W.2d 820, 822 (Tex.Civ. App.–San Antonio 1936, no writ)); *Rehak Creative Servs.*, 404 S.W.3d at 726 (relying on same two cases).

Both cases involved fraud claims. In *McDonald*, the trial court granted summary judgment on the fraud claim, and the appellate court affirmed, concluding no material fact issue existed as to one or more of the claim's essential elements. *McDonald*, 464 S.W.2d at 456. The court noted that the summary judgment could not be reversed on the presumption of fraud but rather required the existence of a fact issue raised by more than mere conjecture:

As to appellants' claim of fraud, the burden was upon them to raise a fact issue as to its existence by competent evidence. This burden could not be discharged in the absence of a showing that all of the elements of actionable fraud were present. *Mere conjecture or evidence which does not necessarily tend to that conclusion is insufficient. Charges of fraud must be established by clear and specific evidence unaided by presumptions, inferences or intendments.* Until or unless fraud is proved, the presumption is in favor of the fairness of a transaction and specific acts of fraud must be both alleged and proved by appellants in response to appellee's motion for summary judgment.

*Id.* (emphasis added).

The context establishes that the court was not attempting to define "clear and specific evidence" to exclude circumstantial evidence or to require only direct evidence to create a fact question. Such a definition would, of course, have been erroneous "[s]ince intent to defraud is not susceptible to direct proof [and] invariably must be proven by circumstantial evidence." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986). Similarly, the court in *S. Cantu & Son* did not define "clear and specific evidence" to exclude circumstantial evidence but instead said that fraud could not be inferred from the "vague, indefinite, and inconclusive" testimony of interested witnesses.[7]

■ Circumstantial evidence can, of course, be vague, indefinite, or inconclusive, but it is not so by definition. Rather,

---

7. The court wrote:

Charges of fraud must be established by clear and specific evidence, which may not be aided by presumptions or inferences, or intendment. The evidence and findings of the representations complained of in this case are vague, indefinite, and inconclusive, and, moreover, are so qualified by the testimony of appellee and her sister-in-law, upon which her case rests, as to rob them of the implications of active fraud necessary to destroy a written contract.

*S. Cantu & Son*, 101 S.W.2d at 822.

it is simply indirect evidence that creates an inference to establish a central fact. *See Felker v. Petrolon, Inc.*, 929 S.W.2d 460, 463–64 (Tex.App.–Houston [1st Dist.] 1996, writ denied). It is admissible unless the connection between the fact and the inference is too weak to be of help in deciding the case. TEX. R. EVID. 401–02. The common law has developed several distinct evidentiary standards, but none of these standards categorically rejects the use of circumstantial evidence.

■■ The applicable evidentiary standard is generally determined by the nature of the case or particular claim. Criminal cases require proof beyond a reasonable doubt, a near certainty, whereas civil cases typically apply the preponderance-of-the-evidence standard, that is, a fact-finder's determination that the plaintiff's version of the events is more likely than not true. Some civil claims, including some defamation claims, elevate the evidentiary standard to require proof by clear-and-convincing evidence. *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex.2002). This standard requires that the strength of the plaintiff's proof produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations. *Id.* at 597.

Clear and specific evidence is not a recognized evidentiary standard. Although it sounds similar to clear and convincing evidence, the phrases are not legally synonymous. The Legislature well understands the clear-and-convincing-evidence standard and uses that standard when it so intends. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE §§ 18.033(c), 41.001(2), 41.003(b), (c), 134A.004(b), 147.122.[8] But even were we to assume that the Legislature intended to apply the clear-and-convincing standard in

this statute, the statute would still not exclude circumstantial evidence.

■■ All evidentiary standards, including clear and convincing evidence, recognize the relevance of circumstantial evidence. In fact, we have acknowledged that the determination of certain facts in particular cases may exclusively depend on such evidence. *See, e.g., Bentley*, 94 S.W.3d at 596 (noting, in a defamation case, that claims involving an element of a defendant's state of mind "must usually [ ] be proved by circumstantial evidence"). Circumstantial evidence may be used to prove one's case-in-chief or to defeat a motion for directed verdict, and so it would be odd to deny its use here to defeat a preliminary motion to dismiss under the TCPA. That the statute should create a greater obstacle for the plaintiff to get into the courthouse than to win its case seems nonsensical. *See Carreras v. Marroquin*, 339 S.W.3d 68, 73 (Tex.2011) (noting that we "interpret statutes to avoid an absurd result").

■ The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *See* TEX. CIV. PRAC. & REM. CODE § 27.002 (balancing "the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" against "the rights of a person to file meritorious lawsuits for demonstrable injury"). To accomplish its purpose, the Act endorses a summary process, requiring judicial review of the pleadings and limited evidence, typically within 150 days following service. TEX. CIV. PRAC. & REM. CODE

---

8. The phrase "clear and specific evidence" appears in only three statutes. *See* TEX. CIV. PRAC. & REM. CODE §§ 22.025, 27.005(c); TEX. CODE CRIM PROC. art. 3811, § 6. "Clear and specific showing" appears in two others. *See* TEX. CIV. PRAC. & REM. CODE § 22.024; TEX. CODE CRIM PROC. art. 3811, §§ 4(a), (c), 5(a).

§§ 27.003(b), .004(a), .005(a); *Jennings,* 378 S.W.3d at 526. To defeat an appropriate TCPA motion to dismiss, the opponent must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c).

As discussed, neither the Act nor the common law provides a definition for "clear and specific evidence."[9] Words and phrases that are not defined by statute and that have not acquired a special or technical meaning are typically given their plain or common meaning. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.,* 255 S.W.3d 619, 633 (Tex.2008). The words "clear" and "specific" in the context of this statute have been interpreted respectively to mean, for the former, " 'unambiguous,' 'sure,' or 'free from doubt' " and, for the latter, " 'explicit' or 'relating to a particular named thing.' " *See KTRK Television, Inc. v. Robinson,* 409 S.W.3d 682, 689 (Tex.App.–Houston [1st Dist.] 2013, pet. denied) (quoting BLACK'S LAW DICTIONARY 268, 1434 (8th ed.2004)).

The statute, however, requires not only "clear and specific evidence" but also a "prima facie case." In contrast to "clear and specific evidence," a "prima facie case" has a traditional legal meaning. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Simonds v. Stanolind Oil & Gas Co.,* 134 Tex. 332, 136 S.W.2d 207, 209 (1940). It is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex.2004) (per curiam) (quoting *Tex. Tech Univ. Health Scis. Ctr. v. Apodaca,* 876 S.W.2d 402, 407 (Tex.App.–El Paso 1994, writ denied)).

The TCPA's direction that a claim should not be dismissed "if the party bringing the legal action establishes by *clear and specific evidence a prima facie case* for each essential element of the claim in question" thus describes the clarity and detail required to avoid dismissal. TEX. CIV. PRAC. & REM. CODE § 27.005(c) (emphasis added). Courts are further directed to make that determination early in the proceedings, typically on the basis of the pleadings and affidavits. But pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's "clear and specific evidence" requirement.

Our procedural rules merely require that the pleadings provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense. *See* TEX. R. CIV. P. 45 & 47. Even the omission of an element is not fatal if the cause of action "may be reasonably inferred from what is specifically stated." *Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex.1993). Moreover, under notice pleading, a plaintiff is not required to "set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." *Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 494–95 (Tex.1988). But the TCPA requires that on motion the plaintiff present "clear and specific evidence" of "each essential element."

Fair notice of a claim under our procedural rules thus may require something less than "clear and specific evidence" of each essential element of the claim. Because the Act requires more, mere notice pleading—that is, general allegations that merely recite the elements of

9. Before the TCPA's enactment, the phrase appeared in two reported cases. *See Mc-Donald,* 464 S.W.2d at 456; *S. Cantu & Son,* 101 S.W.2d at 822. Since its enactment, the phrase has appeared in over thirty reported cases tied to a discussion of the statute.

a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for its claim. In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss.

 Though the TCPA initially demands more information about the underlying claim, the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence. In short, it does not impose a higher burden of proof than that required of the plaintiff at trial. We accordingly disapprove those cases that interpret the TCPA to require direct evidence of each essential element of the underlying claim to avoid dismissal. With that understanding of the Act's requirements, we turn to pleadings and evidence in this case.

### III. Steven Lipsky's Petition

Range sued Steven Lipsky, alleging defamation, business disparagement, and civil conspiracy. The court of appeals found no evidence of a civil conspiracy, but some evidence of the other claims, concluding "that the trial court did not abuse its discretion by denying Steven Lipsky's motion to dismiss Range's defamation and business disparagement claims." 411 S.W.3d at 547. Contrary to the court of appeals's opinion, Lipsky argues that no clear and specific evidence shows he defamed Range or disparaged its business. He concludes then that the trial court should have granted his motion to dismiss pursuant to the TCPA.

 Business disparagement and defamation are similar in that both involve harm from the publication of false information. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex.2014). The respective torts, however, serve different interests. Whereas "defamation actions chiefly serve to protect the personal reputation of an injured party, [ ] a business disparagement claim protects economic interests." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex.2003). Business disparagement or "injurious falsehood applies to derogatory publications about the plaintiff's economic or commercial interests." 3 DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS § 656, at 615 (2d ed.2011). The tort does not seek to redress dignitary harms to the business owner, but rather redresses aspersions cast on the business's commercial product or activity that diminishes those interests. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766–67 (Tex.1987).

 A corporation or other business entity that asserts a claim for defamation may assert an additional or alternative claim for business disparagement if it seeks to recover economic damages for injury to the business. *Burbage v. Burbage*, 447 S.W.3d 249, 261 n.6 (Tex.2014). Impugning one's reputation is possible without disparaging its commercial interests and vice versa. Depending on the circumstances, then, a plaintiff may have a claim for defamation, or for business disparagement, or both.[10]

---

10. Professor Dobbs offers a number of examples of commercial disparagement or trade libel that are not strictly speaking defamatory in the sense of dignitary harm:

 [A] publication that says the defendant's product is poisonous and contaminates the land or [ ] one that says the plaintiff's wood products are inferior and will not stand up.... A false statement that the ratings of the plaintiff's radio show are too low to justify continuing the show.... [A] publication falsely stating the price the plaintiff

## A. Business Disparagement (Injurious Falsehood)

To defend against Lipsky's dismissal motion, Range's burden under the TCPA was to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c). "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages[11] to the plaintiff." *Forbes*, 124 S.W.3d at 170 (citing *Hurlbut*, 749 S.W.2d at 766). Lipsky contends that the trial court should have dismissed Range's business-disparagement claim because no evidence established that his remarks caused Range any special or economic damages.

The court of appeals disagreed. It concluded that an affidavit from Range's senior vice president was sufficient proof of Range's damages, at this stage, to defeat Lipsky's motion to dismiss. *See* 411 S.W.3d at 547 (noting that the affidavit "provided the trial court with minimum but sufficient facts, at this stage in the litigation, to raise a rational inference, and therefore serve as prima facie proof" of Range's losses).

Range's vice president averred in general terms that Lipsky's statements caused Range to suffer "direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill in the communities in which it operates ... in excess of three million dollars."[12] The court of appeals concluded that the affidavit, "by stating that Range had suffered direct economic losses and 'lost profits,'" was sufficient "to raise a rational inference ... that Range lost 'trade or other dealings' as a result of statements made by Steven Lipsky." *Id.* (quoting *Hurlbut*, 749 S.W.2d at 767).

Lipsky argues, however, that the affidavit is conclusory and therefore insufficient to satisfy the TCPA's requirement of "clear and specific evidence," and we agree. Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA. *See Elizondo*

---

charges for his goods [or] that the plaintiff is no longer carrying on a business or has insufficient funds to continue in business. 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 656, at 618–19 (2d ed.2011) (footnotes omitted).

11. Special damages are synonymous with economic damages and are distinguishable from general damages. General damages are recoverable under a defamation claim for non-economic losses, such as loss of reputation and mental anguish. *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex.2013).

12. The court of appeals quoted from the vice president's affidavit as indicated below:

As a direct and proximate result and consequence of the ... false, disparaging, and defamatory public statements made by Steven Lipsky ... regarding Range and its operations, Range's business and reputation have been harmed.... The numerous false, disparaging, and defamatory public statements made by Mr. Lipsky ... have caused Range to be associated in the public as a polluter of water and the environment, and nothing could be further from the truth.

...As a direct and proximate result and consequence of the false, disparaging, and defamatory statements made by Mr. Lipsky ..., *Range has suffered direct pecuniary and economic losses and costs, lost profits,* loss of its reputation, and loss of goodwill in the communities in which it operates. To date, the damages suffered by Range as a direct and proximate result and consequence of the conspiracy and ... defamatory public statements made by Lipsky and Rich are in excess of three million dollars.

411 S.W.3d at 546–47 (omissions in original).

*v. Krist,* 415 S.W.3d 259, 264 (Tex.2013) ("Conclusory statement[s] ... [are] insufficient to create a question of fact to defeat summary judgment."); *City of San Antonio v. Pollock,* 284 S.W.3d 809, 816 (Tex. 2009) (holding conclusory, baseless testimony to be no evidence). Opinions must be based on demonstrable facts and a reasoned basis. *Elizondo,* 415 S.W.3d at 265. We accordingly disagree with the court of appeals that general averments of direct economic losses and lost profits, without more, satisfy the minimum requirements of the TCPA. Although the affidavit states that Range "suffered direct pecuniary and economic losses," it is devoid of any specific facts illustrating how Lipsky's alleged remarks about Range's activities actually caused such losses. *See, e.g., Burbage,* 447 S.W.3d at 262 (noting that a jury could not reasonably infer that cancellations for a funeral home business were caused by defamation when any number of reasons could have caused the cancellations).

▮▮▮▮▮ Range, however, asserted not only business disparagement but also defamation. Corporations and other business entities have reputations that can be libeled apart from the businesses they own, and such entities can prosecute an action for defamation in their own names. *See Waste Mgmt. of Tex.,* 434 S.W.3d at 147, 150–51 & n.35 (recognizing that a corporation, as owner of a business, may sue for defamation that injures its reputation). Moreover, a corporation or other business entity asserting a claim for business disparagement may also assert additional or alternative claims for defamation to recover non-economic general damages such as injury to reputation that are not recoverable on a business-disparagement claim. *Id.* at 155–156 & n.81. We turn then to Range's defamation claim and Lipsky's complaint that the trial court should have also dismissed it.

## B. Defamation

▮▮▮▮▮ Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998); *see also Waste Mgmt. of Tex.,* 434 S.W.3d at 146 n.7. The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *WFAA–TV, Inc.,* 978 S.W.2d at 571. "Actual malice" in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *Huckabee v. Time Warner Entm't Co.,* 19 S.W.3d 413, 420 (Tex.2000). Finally, the plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se. *Waste Mgmt. of Tex.,* 434 S.W.3d at 162 n.7.

▮▮▮▮▮ Defamation per se refers to statements that are so obviously harmful that general damages may be presumed. *Hancock,* 400 S.W.3d at 63–64. General damages include non-economic losses, such as loss of reputation and mental anguish. *Id.* Special damages, on the other hand, are never presumed as they represent specific economic losses that must be proven. *Id.* at 65–66. And even though Texas law presumes general damages when the defamation is per se, it does not "presume any particular amount of damages beyond nominal damages." *Salinas v. Salinas,* 365 S.W.3d 318, 320 (Tex.2012) (per curiam). Any award of general damages that exceeds a nominal sum is thus reviewed for evidentiary support. *Burbage,* 447 S.W.3d at 259; *see also Bentley,* 94 S.W.3d at 606–07 (criticizing award of mental anguish damages in defamation per

se case because it was excessive and beyond any figure the evidence supported).

### (1) *The Falsehoods*

■ Lipsky complains that the trial court should have dismissed the defamation claim against him because Range failed to establish the defamatory nature of his alleged statements. The court of appeals listed the following published statements as potentially defamatory to Range:

- Range's drilling went under the Lipskys house while omitting that Range's wellbore was over a mile below the surface;

- the Lipskys' well no longer pumped water (when it actually could);

- the Lipskys had found unnatural detergents in the water;

- the Lipskys could not live in their home (although they continued to do so);

- Range would eventually "own" the Lipskys' home (which implied that Range was responsible for contaminating the Lipskys' water source and would be liable for doing so);

- Range was politically powerful and had prevailed with the Railroad Commission through corruption, even though the Railroad Commission had considered extensive evidence to support its decision and the Lipskys had not participated in the Railroad Commission's hearing;

- the Lipskys could literally light their water on fire, and the water was unsafe to drink;

- Range's drilling operations contaminated the water (even though the Railroad Commission had found that the operations had not); and

- Range treated the Lipskys like "criminals."

411 S.W.3d at 545 (footnotes omitted). Lipsky argues that these statements are not defamatory either because they are true, do not explicitly refer to Range, are unverifiable statements of opinion, or are statements subject to a bona fide scientific dispute. Lipsky made these statements to the media and to his family and friends, as well as to the EPA, the Parker County Appraisal Review Board, and the Texas Railroad Commission.

■ "It is well settled that the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Bentley*, 94 S.W.3d at 579 (internal quotation marks omitted). While some of the statements may, in isolation, not be actionable, in looking at the entirety of Lipsky's publications the gist of his statements were that Range was responsible for contaminating his well water and the Railroad Commission was unduly influenced to rule otherwise.

The Commission's investigation coincided with the EPA's, beginning in August 2010, after Lipsky complained to the Abilene District Office about gas in his water well. That month, the Commission collected water and gas samples from the Lipskys' well, asked Range to test the mechanical integrity of its wells, and further obtained a gas analysis from Range's operations for comparison with the gas in the Lipskys' well. After comparing the respective gas samples, the Abilene District Office found them to have "distinct characteristics," but the Commission nevertheless continued its investigation.

Meanwhile, the EPA decided that Range's two gas wells were an "imminent and substantial endangerment to a public drinking water aquifer," and issued an Emergency Administrative Order to that effect on December 7, 2010. The next day,

the Commission issued its Notice of Hearing, inviting the EPA and the Lipskys to participate in an evidentiary hearing on the cause of the aquifer's contamination. Neither the EPA nor the Lipskys chose to participate, however.

After hearing testimony on the groundwater investigation and Range's operations in the area, as well as expert testimony on geology, hydrogeology, microseismic analysis, hydraulic fracturing, geochemical gas fingerprinting, and petroleum engineering, the Commission's hearing examiners concluded that Range's gas wells had not contributed to the contamination of any domestic water wells. The examiners concluded instead that the Strawn formation was the most likely source of the gas in the Lipskys' well.

The Strawn is a shallow formation, lying directly beneath the Trinity aquifer at a depth of 200 to 400 feet. There had been gas production from the Strawn in the mid–1980s about a mile from Range's current wells. Range's two wells, however, did not produce from the Strawn. They were instead completed in the Barnett Shale, a formation lying more than a mile below the aquifer. And although Range used hydraulic fracturing of the Barnett Shale to extract its gas, the examiners found that this caused no communication with the aquifer, as nearly a mile of rock remained between the highest fracture point and the aquifer. The examiners further confirmed the mechanical integrity of Range's wells, finding its production casings properly cemented and in compliance with the Texas Commission on Environmental Quality's recommendations for water quality protection. The examiners noted that gas contamination in water wells throughout the county had occurred since at least 2003, several years before Range drilled the two wells in question.

Adopting the examiners' findings and conclusions, the Railroad Commission signed its final order on March 22, 2011. Afterward, Lipsky was quoted in news articles to state that the Commission's decision was "ridiculous," the product of a "corrupt system," and that "it was kind of sad." Although he had not participated in the hearing, he referenced the earlier EPA order and his own expert, who suspected that the contamination resulted from Range's nearby drilling. Thus, despite the Commission's conclusions to the contrary, Lipsky continued to maintain that Range was responsible for contaminating the aquifer and his domestic water well. The court of appeals concluded that there was some evidence of a defamatory statement concerning Range sufficient to defeat Lipsky's TCPA motion to dismiss, and we agree. His statements were not presented as opinion but were "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

### (2) *The Damages*

■ Lipsky also argues that the trial court should have dismissed Range's defamation claim because no evidence established that his remarks caused the company specific damages. The court of appeals again disagreed. It concluded that the affidavit from Range's senior vice president, which discussed Range's losses in very general terms, was sufficient to defeat Lipsky's TCPA motion to dismiss. *See* 411 S.W.3d at 547. As we have already determined, the vice president's affidavit was insufficient proof of Range's special damages for purposes of the TCPA.

■ Range argues, however, that it did not have to submit proof of special damages as part of its defamation claim because Lipsky's statements were defamato-

ry per se. When an offending publication qualifies as defamation per se, a plaintiff may recover general damages without proof of any specific loss. *Hancock*, 400 S.W.3d at 63–64. Thus, if Lipsky's remarks concerning Range are actionable per se, then any failure in proof as to special damages is irrelevant. In other words, if such losses are not an essential element of Range's defamation claim, they can have no bearing on Lipsky's dismissal motion under the TCPA. *See* TEX. CIV. PRAG. & REM. CODE § 27.005(c).

 The common law distinguishes defamation claims as either per se or per quod.[13] *Hancock*, 400 S.W.3d at 63. Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed. *Id.* at 63–64. Defamation per quod is defamation that is not actionable per se. *Id.* at 64. Defamation per se is itself broken down into separate categories of falsehoods. Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se. *Moore v. Waldrop,* 166 S.W.3d 380, 384 (Tex.App.–Waco 2005, no pet.). Remarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se. *Hancock*, 400 S.W.3d at 66. And whether a statement qualifies as defamation per se is generally a question of law. *Id.*

 Range argues that Lipsky's remarks in this case were defamatory per se because they reflected on Range's fitness and abilities as a natural gas producer. To qualify as defamation per se under this category the disparaging words must affect the plaintiff in some manner that is

peculiarly harmful to the plaintiff's trade, business, or profession and not merely upon the plaintiff's general characteristics. *See id.* at 66–67 (noting that a statement injures one in his profession when it would "adversely affect his fitness for the proper conduct" of the business). Range submits that by being falsely branded as a polluter and a threat to public health and safety, Lipsky has portrayed Range as incompetent, even reckless, as a gas producer, thereby injuring the company's reputation.

Environmental responsibility is an attribute particularly important to those in the energy industry—none more so than natural gas producers, such as Range, who employ horizontal drilling and hydraulic fracturing in their business. Accusations that Range's fracking operations contaminated the aquifer thus adversely affect the perception of Range's fitness and abilities as a natural gas producer. As defamation per se, damages to its reputation are presumed, although the presumption alone will support only an award of nominal damages. *Salinas,* 365 S.W.3d at 320. Pleading and proof of particular damage is not required to prevail on a claim of defamation per se, and thus actual damage is not an essential element of the claim to which the TCPA's burden of clear and specific evidence might apply. Although Range's affidavit on damages may have been insufficient to substantiate its claim to special damages, it was not needed to defeat Lipsky's dismissal motion because Range's defamation claim was actionable per se. The trial court accordingly did not abuse its discretion in denying Lipsky's motion to dismiss.

## IV. Range's Petition

 The court of appeals concluded that the TCPA required the dismissal of

---

**13.** The common law distinction between defamation per se and per quod has been criticized as anachronistic and has been abandoned in some jurisdictions, but Texas has not abandoned this distinction. *See Waste Mgmt. of Tex.,* 434 S.W.3d at 146 & nn.8–9.

Range's business-disparagement and defamation claims against Shyla Lipsky and Alisa Rich because no evidence showed that either party published any false statements about Range concerning contamination of the aquifer in general or the Lipsky well in particular. 411 S.W.3d at 547–49. The court also concluded that the TCPA required the dismissal of Range's civil conspiracy claim because no evidence established that the Lipskys and Rich agreed to defame Range, an essential element of Range's civil-conspiracy claim as pled. *Id.* at 551. In its petition, Range seeks reinstatement of its defamation and business-disparagement claims against Shyla Lipsky, as well as reinstatement of its civil-conspiracy claim against all defendants.

Range complains that the court of appeals failed to give it the benefit of rational inferences drawn from the voluminous evidence it presented. It argues that Rich had a history of publicly blaming drilling, in general—and Range in particular—for contaminating the environment and that she devised a "strategy" to get the EPA to investigate the Lipsky contamination claim, which she documented in an email to the Lipskys. Range further complains that Rich played a role in the distribution of Lipsky's "misleading" garden hose video in furtherance of the conspiracy to defame and disparage Range.

The court observed, however, that Rich, although mentioning Lipsky's video to the EPA, had not used it to mislead the agency but rather explained that the hose had been attached to the well vent. 411 S.W.3d at 551. The court found no evidence that Rich participated in distributing the video to the media or contributed to media reports about "water being lit on fire." *Id.* The court of appeals considered the evidence of Rich's alleged predisposition but concluded it was not clear and specific evidence that "Rich had conspired with the Lipskys to blame Range on this occasion." *Id.* The court further considered the email documenting Rich's "strategy," but found it to be no evidence of a conspiracy to defame or disparage Range. Instead, the court observed that the email focused "on the contamination of the Lipskys' well and on executing a plan to trigger an investigation into the contamination rather than on blaming Range or pursuing an action against Range for the contamination." *Id.*

We agree that no clear and specific evidence establishes a prima facie case that Shyla Lipsky or Alisa Rich published any defamatory remarks concerning Range or conspired with Steven Lipsky "to publicly blame Range for the contamination." *Id.* The court of appeals accordingly did not abuse its discretion in holding that the TCPA required the dismissal of Range's claims against Steven Lipsky's wife and environmental consultant and Range's conspiracy claim against all parties.

\* \* \*

The respective petitions filed in this Court by Steven Lipsky and by Range Production Co. and Range Resources Corp. are denied.