**AFFIRMED in part; REVERSED and RENDERED in part; REMANDED; and Opinion Filed July 17, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-24-00010-CV

**ALMA PERALES AND DAVID PLUMMER, Appellants**
**V.**
**SUNSTONE POOLS & OUTDOOR LIVING LLC, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-23-13419**

## MEMORANDUM OPINION

Before Justices Smith, Miskel, and Breedlove
Opinion by Justice Smith

Appellants Alma Perales and David Plummer appeal the trial court's order denying their motion to dismiss under the Texas Citizens' Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–27.011. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### Factual and Procedural Background

Appellants hired appellee Sunstone Pools & Outdoor Living LLC to renovate their pool and backyard. The parties entered into a construction agreement on May

25, 2023, which outlined each task to be completed and the amount it would cost. The amounts were due at commencement and then after completion of certain tasks. The written agreement did not include a timeframe for completion of each task or of the overall project, nor did it state that time was of the essence. According to appellants, however, Sunstone originally said the project would be completed by July 4, 2023.

Shortly after work commenced on the project, appellants became concerned with the amount of work and quality of work that had been performed. Appellants requested Sunstone to provide a schedule due to their concerns that Sunstone was not diligently completing the project. On June 20, 2023, Sunstone provided a prospective schedule with a project completion date of July 15, 2023, barring any delays by weather. Appellants responded that they "would prefer for the whole project to be completed by 7/14." Sunstone replied that it would "work hard to finish your project by that date."

Further delays occurred, as well as continued disputes regarding the quality of work that had been performed. Appellants sent an email to Sunstone emphasizing that Sunstone was yet again behind schedule and that appellants were inclined to not continue with the project or pay for any uncompleted work if the project was not completed by July 14, 2023. Appellants also noted "that to settle any money that needs to be refunded or paid after July 14, 2023, we will be requesting an itemize[d] copy of the cost of material, labor and how [our] money was spent and used that

could also be used as evidence in court through discovery." In response, Sunstone informed appellants that there was no construction schedule in the agreement that would trigger cancellation of phases of construction or refunds for work not yet completed. Sunstone further responded, "Considering your stated intent and promise to breach our construction agreement signed by you by withholding funds for contracted work based on arbitrary conditions not included in the construction agreement, we have no choice but [to] stop work and pull off the job." Sunstone also informed appellants that it could "re-commence scheduling labor and materials for your project" if appellants rescinded their "threats to withhold funds based on schedule dates." Appellants did not rescind their demands, and Sunstone ceased work on the project. Sunstone also denied appellants' request for an itemization of material costs and labor.

Believing that Sunstone had not completed work for which appellants paid, appellants sought a chargeback of $15,000 for the commencement amount that they paid in early June. After speaking with both parties, the credit card company released the funds to Sunstone. Appellants also posted the following negative public review on Google:

BEWARE: SunStone Pools & Outdoor Living, cancelled an unfinished project via email using a bogus excuse while owing us thousands of dollars and leaving us with an unusable backyard full of rocks, sand, holes, rusted metals, and trash.

The owner, Brad, is refusing to return the money and give us an itemized breakdown of all cost and labor. He has threaten (sic) to

countersue me if I take any legal action and has name dropped his Attorney, A. H., to attempt to intimidate me. Below is a summary and I have a attached a more detail (sic) timeline of events. May 21, 2023. Agreement. Total Cost $62,950. Verbally discussed with Byron (Sales person) that I needed the project completed July 4th. As of July 5th, I have given SunStone Pools $36,950 and they have only completed $20,550 worth of work.

. . . .

By July 5, I started receiving text and calls that they were having trouble sourcing the travertine that they knew back on June 19 that they had to pre order 3 weeks in advance. That night I sent an official notification to everyone that I needed that project completed by the agreed date of July 14, 2023 as agreed verbally and in writing.

On July 6. Brad sent me an email cancelling the project because according to him, me asking for the project to be completed by the date that was agreed verbally and in writing was "anticipatory breach of contract."

SunStone Pools stopped work and abandon (sic) the job, so I requested an itemized breakdown of all costs and labor to determine the exact amount owed to us and that any money owed to us be returned by July 10, 2023 end of day. Brad the owner has refused.

I filed a claim with the BBB and his only response was that he cancelled the project because "I promised not to pay" which is lie and I submitted the email as proof.

Appellants posted a similar review on Yelp and submitted a complaint to the Better Business Bureau.

Sunstone posted a response on the Google review explaining that it did not cancel the project but that, instead, appellants sent an email promising not to pay if the job was not finished by July 14. Sunstone further explained that any contractor who was working with someone who created an arbitrary deadline to finish the job

–4–

in order to get paid would do the same. Sunstone also alleged that this was just the beginning of appellants' dishonesty, as appellants had already tried to blame Sunstone for cracks in the plaster. Appellants replied, adding the following statement to their Google review: "His response to this review is a lie. All I want is my money back for a job he cancelled so that I can get someone to clean the mess his company left behind."

The parties were unable to settle their dispute, and Sunstone filed suit against appellants alleging claims for anticipatory breach of contract, defamation, and business disparagement. Appellants filed a general denial and countersued for claims of breach of implied warranty of good and workmanlike performance, breach of contract, unjust enrichment, and violations of the Texas Deceptive Trade Practices Act (DTPA). *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–17.63. Appellants also filed a motion to dismiss under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.003. In their motion, appellants argued that Sunstone sued them in response to their negative review of Sunstone's services on Google, which was an exercise of their rights of free speech. Sunstone filed a response and appellants filed a reply. After a hearing, the trial court denied appellant's motion to dismiss. This expedited interlocutory appeal ensued. *See id.* §§ 27.008(b), 51.014(a)(12).

On appeal, appellants argue that Sunstone failed to present any admissible evidence in its response to appellants' motion to dismiss to support its claims. Thus, appellants assert that the trial court erred in denying their motion to dismiss.

–5–

## TCPA Framework and Standard of Review

Chapter 27 of the Texas Civil Practice and Remedies Code is a legislative enactment to curb "strategic lawsuits against public participation." *Thomas v. Wm. Charles Bundren & Assocs. Law Grp. PLLC*, No. 05-20-00632-CV, 2021 WL 3159795, at *3 (Tex. App.—Dallas July 26, 2021, no pet.) (mem. op.). The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. The primary feature of the TCPA is a burden-shifting dismissal framework that allows defendants at an early stage to seek dismissal of a meritless suit in response to a defendant's exercise of a protected right. *Thomas*, 2021 WL 3159795, at *3. The moving party bears the initial burden of demonstrating that the legal action is based on or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b). If the movant carries that burden, the nonmovant seeking to avoid dismissal must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

We review de novo the trial court's ruling on a TCPA motion, including the trial court's determinations as to whether the parties met their respective burdens under section 27.005. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377

(Tex. 2019). In conducting our review, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a); *see also* TEX. R. CIV. P. 166a (summary judgment procedure). With this framework in mind, we consider appellants' motion to dismiss.

### Exercise of the Right of Free Speech

The "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A "'[m]atter of public concern' means a statement or activity regarding," in relevant part, "a matter of political, social, or other interest to the community," or "a subject of concern to the public." *Id.* § 27.001(7)(B)–(C). Section 27.010(b)(2) provides that the TCPA applies to "a legal action against a person related to the communication, gathering, receiving, posting, or processing of consumer opinions or commentary, evaluations of consumer complaints, or reviews or ratings of businesses." TEX. CIV. PRAC. & REM. CODE § 27.010(b)(2).

The parties do not dispute that Sunstone's claims for defamation and business disparagement were in response to appellants' exercise of free speech and, therefore, we need not address whether appellants met their step-one burden as to Sunstone's claims for defamation and business disparagement. *See Hall*, 579 S.W.3d at 377

–7–

(neither party disputed that the TCPA applied, so the burden shifted to the nonmovant to establish a prima facie case).

The parties do, however, dispute whether the TCPA applies to Sunstone's anticipatory breach of contract claim against appellants. We conclude that appellants did not meet their step-one burden to establish that Sunstone's cause of action for breach of contract was filed in response to appellants exercising their right to free speech. In fact, in their motion to dismiss, appellants did not specifically address whether the TCPA applied to Sunstone's breach of contract claim. Instead, appellants generally claimed, "This legal action is Plaintiff Sunstone's response to Perales' exercise of her rights of free speech . . . and is directly linked to her negative review of Sunstone's services on Google," and "The gravamen of Plaintiff's legal action revolves around the negative review." Appellants further stated, in reference to Sunstone's claims for defamation and business disparagement, "Two of Sunstone's three causes of action are directly related to Perales' generally negative review of Sunstone on Google and with the Better Business Bureau." And, in their reply in support of their motion to dismiss, appellants simply stated that "Sunstone's breach of contract claim is no more than a pretext for filing suit in retaliation for negative review."

We do not agree that Sunstone's breach of contract claim is a mere pretext for filing suit. The parties each dispute the terms of the construction agreement, and each believe that the other breached the agreement first. As Sunstone argued in its

response to appellants' motion to dismiss, "[t]he sole predicates for Sunstone's breach of contract claim are [appellants]' repudiation of the Agreement and failure to pay."

Additionally, the Google review and complaint to the Better Business Bureau came after the alleged anticipatory breach of contract by appellants and the alleged breach of contract by Sunstone. And, while the construction agreement and emails and text messages leading up to the alleged breaches were communications, they were not communications made in connection with a matter of public concern. *See id.* § 27.001(1), (3). Instead, the parties' communications with regard to the construction agreement concerned a private contract dispute, which at the time of the alleged breaches, remained private. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019) ("[C]ommunications, with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA."); *Forget About It, Inc. v. BioTE Med., LLC*, 585 S.W.3d 59, 68 (Tex. App.—Dallas 2019, pet. denied) ("[A] private communication made in connection with a business dispute is not a matter of public concern under the TCPA."). Therefore, appellants failed to meet their step-one burden to show that the TCPA applied to Sunstone's anticipatory breach of contract claim against them and, thus, the trial court did not err in denying appellants' motion to dismiss as to the breach of contract claim.

–9–

**Prima Facie Case of Defamation**

We next turn to whether Sunstone established by clear and specific evidence a prima facie case for each essential element of its defamation and business disparagement claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). "Business disparagement and defamation are similar in that both involve harm from the publication of false information." *See In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (orig. proceeding). The elements of a defamation action include (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) that caused damages. *Id.* at 593 (the requisite degree of fault for a private individual who is allegedly defamed is negligence and for a public figure or official is malice). The elements of a business disparagement claim are (1) a publication of false and disparaging information about the plaintiff, (2) with malice, (3) without privilege, and (4) that resulted in special damages. *Id.* at 592. "Special damages are synonymous with economic damages." *Id.* at 592 n.11.

As for defamation, if the statements are defamatory per se, a plaintiff may recover general damages without proof of any specific loss. *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013). "Historically, defamation per se has involved statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Id.* at 63–64 (footnotes omitted). Statements that injure a person in his office,

profession, or occupation constitute defamation per se. *Id.* at 66. A statement that injures a person in his profession "ascribes to [that person] conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit." *Id.* at 66–67 (quoting RESTATEMENT (SECOND) OF TORTS § 573). However, "[d]isparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Id.* at 67 (quoting RESTATEMENT (SECOND) OF TORTS § 573 cmt. e). Thus, the defamatory statement must accuse the professional of "lacking a peculiar or unique skill that is necessary for the proper conduct of the profession" to constitute defamation per se. *Id.* "[D]isparaging the quality or condition of a business's product or service is not, standing alone, defamation per se." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 426–27 (Tex. 2020).

In its petition, Sunstone specifically alleged that the following five statements by appellants were defamatory and disparaging:

- Sunstone "canceled an unfinished project via email using a bogus excuse while owing us thousands of dollars";

- Sunstone "lied" by asserting that Defendants [appellants] promised not to pay;

- There was "an agreed completion date of July 14";

–11–

- Sunstone had "only completed $20,550 worth of work" despite being paid $36,950; and

- Sunstone's subsequent response to the review "is a lie."

These statements generally accuse Sunstone of dishonesty and of failing to finish the outdoor project as agreed. An accusation of untruthfulness is not generally defamatory per se because it does not attack a unique or peculiar skill as most businesses and professions involve developing relationships with people that are based on trust. *Hancock*, 400 S.W.3d at 67–68. Similarly, accusations that Sunstone failed to perform as agreed does not attack a unique or peculiar skill of a pool and outdoor renovation company; it could equally apply to any business with which a customer has agreed to do business.

Sunstone argues that appellants' statements also accuse them of a crime, which is defamatory per se. *See Lipsky*, 460 S.W.3d at 596. But appellants never used the word theft or steal in their statements. Instead, their statements indicate that they paid for work they did not receive. Although theft is a crime, *see* TEX. PENAL CODE ANN. § 31.03, not every dispute about unfinished work under a construction agreement rises to the level of a criminal offense. *See, e.g.*, *Stockman v. State*, 826 S.W.2d 627, 628, 630, 632, 635–36 (Tex. App.—Dallas 1992, pet. ref'd) (in concluding evidence was legally insufficient to support a conviction for theft, this Court explained, "[T]he very exchange of correspondence between the parties' attorneys tells us of a civil dispute between homeowner and contractor with

–12–

the attendant complaints of one against the other arising from different positions as to their contractual arrangement"). "The mere fact that one fails to return or pay back money after failing to perform a contract, for the performance of which the money was paid in advance, does not constitute theft." *Id.* at 636. Therefore, we do not agree that appellants' reviews could be reasonably read to accuse Sunstone of a crime. We conclude that appellants' statements were not defamatory per se and, thus, Sunstone was required to present clear and specific evidence of damages.

In its response to appellants' motion to dismiss, Sunstone presented a sworn declaration of Brad Cormack, its sole owner and manager. As to damages Sunstone suffered, Cormack declared:

> 20. [Appellants]' Publications and the false statements therein have already harmed Sunstone's business reputation and caused Sunstone to lose business opportunities. By way of example only, just a couple weeks after Defendants began making their Publications, a potential customer, with a job worth approximately $55,000.00 to Sunstone, declined to work with Sunstone based on "long research and reviews" and instead selected a different company.

> 21. Additionally, following [appellants]' false chargeback claim with their credit card carrier, Sunstone's merchant services provider terminated its relationship with Sunstone. Another merchant services provider has similarly refused to work with Sunstone. The loss of its merchant services provider and impediment to obtaining a new one has impaired Sunstone's ability to effectively conduct business and consummate business opportunities with customers seeking to pay by credit card.

First, we note appellants' complaint that Cormack's statement that "a potential customer, with a job worth approximately $55,000.00 to Sunstone, declined to work

–13–

with Sunstone based on 'long research and reviews' and instead selected a different company" was hearsay. Although appellants objected to this statement on hearsay grounds below, the trial court did not rule on appellants' objection and, thus, appellants did not preserve their evidentiary complaint for appeal. *See* TEX. R. APP. P. 33.1(a)(2).

We next turn to whether Cormack's declaration met Sunstone's burden to show by clear and specific evidence that appellants' online reviews caused it to suffer damages. "Evidence that the plaintiff has lost a job or business opportunities may be evidence of loss of reputation, but only if it is connected to the defamatory statements." *Anderson v. Durant*, 550 S.W.3d 605, 621 (Tex. 2018). Here, Sunstone's evidence that an unnamed potential customer "declined to work with Sunstone based on 'long research and reviews'" fails to attribute the decision not to hire Sunstone specifically to appellants' review. The evidence shows that Google contained other negative reviews regarding Sunstone and that other complaints were made to the Better Business Bureau. Without further evidence that the unnamed potential customer specifically read appellants' review and that such review contributed to the person's decision to choose another company instead of Sunstone, there is no evidence linking Sunstone's loss to appellants' online reviews. We decline Sunstone's invitation to assume the unnamed potential customer read appellants' review because it was one of the most recent.

–14–

In support of the damages element, Sunstone also points to its loss of services from its merchant services provider and to its loss of business with another merchant services provider that refused to work with Sunstone after appellants pursued the chargeback request. In its response to appellants' motion to dismiss, Sunstone argued it had "suffered pecuniary loss from impeded business operations due to the loss of its merchant services provider and the refusal of at least one other merchant services provider to service Sunstone." Cormack's declaration does not provide further details but instead, generally avers, "The loss of its merchant services provider and impediment to obtaining a new one has impaired Sunstone's ability to effectively conduct business and consummate business opportunities with customers seeking to pay by credit card." "[G]eneral averments of direct economic losses and lost profits, without more," is not enough to "satisfy the minimum requirements of the TCPA." *Lipsky*, 460 S.W.3d at 593. Instead, the evidence must illustrate how the defendant's alleged remarks about the plaintiff actually caused such losses. *Id.*

Sunstone again asks us to make an assumption about the evidence presented—that the timing of the merchant services providers' refusal to do business with Sunstone establishes that the refusals were based on appellants' defamatory statements when requesting the chargeback. We decline to do so, as we disagree that the evidence that Sunstone's merchant services provider terminated its relationship with Sunstone shortly after the chargeback supports a reasonable inference that such termination was caused by the chargeback request and harmed

–15–

Sunstone's reputation. The chargeback request was ultimately resolved in Sunstone's favor, and Sunstone presented no evidence showing that appellants' statements made during their unsuccessful chargeback attempt was the reason the merchant services providers refused to work with Sunstone. To establish a prima facie case, the party must present "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590. Sunstone failed to do so.

Therefore, Sunstone failed to carry its burden to establish by clear and specific evidence a prima facie case for the damages element of its defamation and business disparagement claims. Because Sunstone failed to meet its burden, the trial court erred in denying appellants' motion to dismiss Sunstone's causes of action for defamation and business disparagement. Therefore, we sustain appellants' sole issue as to those claims.

**Conclusion**

We conclude that the trial court erred by denying appellants' motion to dismiss as to Sunstone's claims for defamation and business disparagement. However, the trial court properly denied appellants' motion to dismiss as to Sunstone's claim for anticipatory breach of contract. Therefore, we reverse the trial court's order denying appellants' motion to dismiss as to Sunstone's claims for defamation and business disparagement and render judgment dismissing those claims. We remand the case to the trial court for further proceedings consistent with

–16–

this opinion, including any claims for attorney's fees or sanctions in connection with appellants' TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 27.007 (additional findings required to award sanctions); § 27.009 (provisions regarding when attorney's fees and costs may or shall be awarded).


/Craig Smith/
CRAIG SMITH
240010F.P05                                    JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALMA PERALES AND DAVID
PLUMMER, Appellants

No. 05-24-00010-CV     V.

SUNSTONE POOLS & OUTDOOR
LIVING LLC, Appellee

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-23-13419.
Opinion delivered by Justice Smith.
Justices Miskel and Breedlove
participating.

In accordance with this Court's opinion of this date, the December 15, 2023 order of the trial court denying appellants ALMA PERALES and DAVID PLUMMER's motion to dismiss under the Texas Citizens' Participation Act is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order denying appellants' motion to dismiss as to appellee SUNSTONE POOL & OUTDOOR LIVING, LLC's claims for defamation and business disparagement and **RENDER** judgment dismissing those claims. In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 17th day of July 2024.