**Reversed and Remanded and Opinion filed March 11, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00178-CV

---

### UNITED LOCATING SERVICES, LLC, Appellant

### V.

### DAMON FOBBS, RODNEY JOHNSON, & CARLOS HARRELL, Appellees

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2018-71384**

---

### O P I N I O N[1]

Appellant United Locating Services of Texas, LLC brings this interlocutory appeal from the trial court's denial of a motion to dismiss brought under the Texas Citizens Participation Act ("TCPA").[2]  Appellees Damon Fobbs, Rodney Johnson,

---

[1] Justice Bourliot dissents without opinion.

[2] This case is controlled by a prior version of the TCPA.  The TCPA was substantially amended by the Act of May 20, 2019, 86th Leg., R.S., H.B. 98, which modified Texas Civil Practice & Remedies sections 27.001(2), (6) and (7); 27.003(a)-(b), (d)-(e); 27.005(a)-(b), (d); 27.006; 27.007; 27.0075; 27.009; and 27.010.  We cite to the Texas General Laws when we are citing to

and Carlos Harrell, three former United employees, assert claims for defamation and invasion of privacy by appropriation of name or likeness based on allegations that United continued to use their names on certain documents after they separated from United. Concluding that their claims fall within the TCPA's broad scope and that each plaintiff failed to establish by clear and specific evidence a prima facie case for each essential element of either of these claims, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

United locates and identifies underground utility lines and pipework for customers who plan to build, dig, or otherwise move earth. United assists customers by appropriately marking areas of underground utilities so that the customer can avoid them. United employed Fobbs, Johnson, and Harrell (collectively, "Former Employees") as "locators." A locator's job is to identify and mark utilities at construction sites.

According to the parties, in the usual course of business a customer calls 8-1-1, which is the "Call-before-you-dig" hotline, and the 8-1-1 call center generates a "Locate Request Ticket" for the customer. The customer then forwards the Locate Request Ticket to United and United, in turn, assigns the ticket to a locator. United puts the locator's name on the Locate Request Ticket if it is necessary to send the employee into the field to locate the utilities at issue.

If a utility line that belongs to a United customer is damaged, a "Damage Tracker" is generated so that United can investigate the damage and determine the cause. A Damage Tracker contains the name of the employee assigned to investigate the damage to the underground utility lines and pipework. Some Damage Trackers also contain utility-marking information found on a Locate

---

a former version of a provision of Chapter 27 of the Texas Civil Practice and Remedies Code.

Request Ticket generated for the area, such as the ticket number and name of the locator previously tasked with locating and marking the underground utility lines and pipework in the area.

United uses Locate Request Tickets and Damage Trackers to communicate with various personnel and supervisors within United in the regular course of business, and United shares both with United customers who request the utility locating service or report damage to a utility line.

*The Former Employees' Claims*

The Former Employees sued United asserting claims for defamation and invasion of privacy by appropriation of name or likeness (the "Name Appropriation Claims"). The Former Employees allege that at some point after they stopped working for United, United placed their names on various "work orders" (Locate Request Tickets) and "damage tickets" ("Damage Trackers").

The Former Employees premised their Name Appropriation Claims on allegations that United "appropriated [their] names for [United's own use] on work order tickets for [CenterPoint Energy] and other customers contracting for utility locating services." In their petition the Former Employees allege that United received a benefit by closing out and charging damage tickets to the Former Employees. They allege United did not have to pay their employees for the work that the Former Employees allegedly performed.

The Former Employees premised their defamation claims on allegations that United made false written statements concerning "damage tickets." The Former Employees allege that United "falsely stated that [the Former Employees] were completing and closing out jobs and were causing damages because the locating was done incorrectly." The Former Employees further allege that United made these statements "to receive compensation from customers without having to

compensate [the Former Employees] or employees who actually performed the work."

The Former Employees seek actual damages, unspecified "special or consequential damages," and exemplary damages.

*United's Motion to Dismiss*

United filed a motion to dismiss under the TCPA, asking the trial court to dismiss all claims, impose sanctions, and award attorney's fees. United asserted that each of the Former Employees' claims were based on, related to, or made in response to United's "exercise of its rights to speak or associate freely."

United asserted that the claims fell under the TCPA's scope as related to or based on the "exercise of the right of free speech" because, according to United, "the speech at the heart of [the Former Employees'] lawsuit" was "communication concerning the parties responsible for properly identifying and locating potentially hazardous utility lines." United argued the speech implicated "issues of public concern that include health or safety, environmental or community well-being, and a service in the marketplace."

United further asserted that the claims fell under the TCPA's scope as related to or based on the "exercise of the right of association" because internal communications with company personnel as well as external communications with customers were made in pursuit of the common interest of "completing needed utility location services and, in some instances, determining the cause of damage to those utility lines and related property damage."

In its motion United also set out the elements of the Former Employees' defamation claims and Name Appropriation Claims, challenging the Former Employees' ability to establish by clear and specific evidence a prima facie case

for each essential element of the claims.

*The Former Employees' Response to United's Motion*

The Former Employees contended in the trial court and argue in this interlocutory appeal that the TCPA does not apply to their claims. They allege United "fabricated" the Locate Request Tickets and Damage Trackers. According to the Former Employees, the fabrication rendered these items incapable of being "created to prevent future damages and risk to the public" or of "address[ing] public concerns" because the fabricated items provided no public benefit. The Former Employees also attempted to establish by clear and specific evidence a prima facie case for each essential element of their claims. Each of the Former Employees provided a short affidavit with attached documents.

*The Trial Court's Interlocutory Order Denying United's Motion*

At the hearing on United's motion, the truth of the statements contained in the tickets and trackers was central to discussions about the applicability of the TCPA and whether the Former Employees established by clear and specific evidence a prima facie case for each essential element of the claims. After taking the matter under advisement and allowing United time to file an affidavit proving its attorney's fees, the trial court denied United's motion to dismiss. Two days later, United filed its request for findings of fact and conclusions of law. The trial court issued findings, that (1) "[the Former Employees] did not bring their legal action to deter or prevent [United] from exercising constitutional rights," and (2) "[Former Employees] did not bring their legal action for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation." United then brought this appeal.

5

## II. ISSUES AND ANALYSIS

Under its first issue, United argues that the trial court erred in denying its motion to dismiss because (1) it satisfied its initial burden to show that the TCPA applied to the Former Employees' claims, and (2) the Former Employees failed to establish by clear and specific evidence a prima facie case for each essential element of the claims. Also under its first issue, United challenges the trial court's two findings. In its second issue, United argues that the trial court reversibly erred in denying United's request for court costs, reasonable attorney's fees, expenses, and sanctions under former section 27.009(a), Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962-63 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)).

Under the version of the TCPA we apply today, the party filing a motion to dismiss shoulders the burden to "show[] by a preponderance of the evidence" that the claims in question are "based on, relate[] to, or are in response to" the party's exercise of the right of free speech, the right to petition, or the right of association. Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(replacing "shows by a preponderance of the evidence" with "demonstrates", and removing "relates to")). If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the party asserting the claim establishes by "clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). A "prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *See In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). A prima facie case reflects the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. *Id*. The phrase "clear

and specific" describes the "clarity and detail required to avoid dismissal" and does not impose a burden of proof higher than the burden required at trial. *Id*. at 590–91.

Even if the claimant meets this burden, the court still must dismiss the lawsuit if the movant establishes by a preponderance of the evidence each essential element of a valid defense to the claim. Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 2, 2013 Tex. Gen. Laws 2501, 2501 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d)). In determining whether to grant or deny a motion to dismiss, the trial court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a)).

**A. Does the TCPA apply to the Former Employees' defamation claims and Name Appropriation Claims?**

We first consider United's argument that it showed the TCPA applies to the Former Employees' defamation claims and Name Appropriation Claims. To satisfy its burden, United had to show by a preponderance of the evidence that each of these claims is "based on, relates to, or is in response to" United's exercise of the right of free speech or the right of association. *See Lipsky*, 460 S.W.3d at 586. We review de novo the trial court's determination of whether United satisfied this burden. *See Deaver v. Desai*, 483 S.W.3d 668, 672 (Tex. App.–Houston [14th Dist.] 2015, no pet.).

Under the TCPA, a communication made in connection with a matter of public concern constitutes an exercise of the right of free speech. Tex. Civ. Prac. & Rem. Code § 27.001(3); *Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309,

at \*2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code § 27.001(1). Although the statute has changed, under the version of the TPCA applicable to today's case, a "matter of public concern" is defined to include an issue related to "health or safety," "environmental, economic, or community wellbeing," and "a service in the marketplace." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)).

Both the defamation claims and the Name Appropriation Claims are based on allegations that after each of the Former Employees stopped working for United, United placed of the name of each of them on certain documents — Locate Request Tickets and Damage Trackers. In the context of the Name Appropriation Claims, the Former Employees complain about United's statements that they located and identified underground utility lines for United's customers when the Former Employees were not working for United. In the context of the defamation claims, the Former Employees allege that United falsely stated that the Former Employees were completing and closing out jobs and that they were causing damages by incorrectly doing their work as locators.

In their response to United's motion to dismiss, the Former Employees acknowledge that the Locate Request Tickets and Damage Trackers are used "so that the utilities would not be damaged during construction." The alleged statements on which the Former Employees base their claims are communications within the meaning of the TCPA. These communications address the Former Employees' work of locating and identifying underground utility lines and making

8

these utility lines visible to those digging and improving property above ground. This work aids the workers, construction companies, utility companies, landowners, and those nearby to avoid potential environmental, health, safety, and economic risks associated with digging underground. These alleged communications were made in connection with an issue related to "health or safety," "environmental, economic, or community wellbeing," and "a service in the marketplace." *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)). Therefore, the alleged communications were made in connection with a matter of public concern, and they constitute an exercise of the right of free speech. *See id.* United carried its burden to show by a preponderance of the evidence that the Former Employees' defamation claims and Name Appropriation Claims are based on, relate to, or are in response to United's exercise of the right of free speech. *See id.*; *see also* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017) (concluding under version of the TCPA applicable to today's case that communications concerning employee's alleged failure to gauge tank 7840, related to a "matter of public concern" because the tank-gauging process was one completed at least in part, to reduce the potential environmental, health, safety, and economic risks associated with noxious and flammable chemicals overfilling and spilling onto the ground); *Cunningham v. Waymire*, 14-17-00883-CV, 2019 WL 5382597, at *8 (Tex. App.—Houston [14th Dist.] Oct. 22, 2019, no pet.) (concluding under version of the TCPA applicable to today's case that "[p]rivate communications on "matters of public concern" are covered by the TCPA"). As it did in the trial court, United relies upon the *Coleman* case as support for its contention that comparable claims have been found

to fall under the scope of the TCPA. We agree that *Coleman* is instructive. In *Coleman*, the Supreme Court of Texas held that a Near Loss Report and an Inventory Planning Sheet, which we find analogous to the alleged Locate Request Tickets and Damage Trackers at issue, constituted "communications" under the TCPA. *See Coleman*, 512 S.W.3d at 901.

Although they present it in several ways, the Former Employees' only scope-argument is that the TCPA does not apply to false statements. They argue that their claims cannot fall within the scope of the TCPA because, as they contend, the statements at the center of the allegations were false in that the employees, as former employees, could not have performed the locating services as described on the dates indicated. Specifically, the Former Employees argue that:

1. The *Coleman* case is factually distinguishable because the Former Employees (unlike Coleman) were not employed by the company when the company made the statements, and the statements were therefore false.

2. Under section 103.001 of the Texas Labor Code the TCPA "only affords a qualified privilege to employers who disclose information about employees which they believe to be reasonably true," and that United failed to demonstrate that the qualified privilege applied.

3. False statements regarding private individuals are not protected speech, even if such false statements are matters of public concern.

This argument is not convincing. First, the *Coleman* court did not base its holding on the status of Coleman's employment with ExxonMobil; rather, the court found that Coleman's claims fell within the scope of the TCPA's free-speech prong based on the subject matter of the alleged communications involved. *See Coleman*, 512 S.W.3d at 901. Thus, the Former Employees undertake to distinguish the case on a fact not material to the holding in *Coleman*. Second, whether United asserted and proved a qualified privilege under the Texas Labor Code or any other law is irrelevant to whether the Former Employees' claims fall

10

within the scope of the TCPA. What United may choose to assert as an affirmative defense to the Former Employee's claims does not form part of the calculus of whether those claims fall within the TCPA's scope. The Former Employees cite the *Castleman* opinion from the Seventh Court of Appeals for the proposition that false statements regarding private individuals are not protected speech, even if such false statements are matters of public concern. In *Castleman*, the court of appeals concluded that the TCPA applied to the defamation claims in that case. *See Castleman v. Internet Money Ltd.*, 07-16-00320-CV, 2018 WL 5093857, at *2–3 (Tex. App.—Amarillo Oct. 18, 2018, pet. denied). The court of appeals then concluded that the plaintiffs had establish by clear and specific evidence a prima facie case for each essential element of either of these claims. *See id*. at *3–6. The *Castleman* court concluded that the TCPA applied to the defamation claims before it, and nothing in the *Castleman* opinion shows that the TCPA does not apply to the Former Employees' claims. *See id*. at *2–6.

Because United carried its burden to show by a preponderance of the evidence that the Former Employees' claims are based on, relate to, or are in response to United's exercise of the right of free speech, the trial court erred to the extent that it concluded that United failed to make that showing. Thus, we need not and do not address whether United carried its burden to show by a preponderance of the evidence that the Former Employees' claims are based on, relate to, or are in response to United's exercise of the right of association.

**B. Did the trial court abuse its discretion in its implicit ruling that the Former Employees satisfied their burden of establishing each of the essential elements of their claims by clear and specific evidence?**

We next consider whether the trial court erred in its implied finding that the Former Employees satisfied their burden to establish each of the essential elements of their claims by clear and specific evidence.

## 1. Name Appropriation Claims

The three elements of a claim for invasion of privacy by appropriation of name or likeness are (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *Watson v. Talia Heights, LLC*, 566 S.W.3d 326, 329–30 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.) . Under Texas law courts apply a very restrictive interpretation of this tort. *Watson*, 566 S.W.3d at 329–30.  Texas law does not protect a name *per se*, but the value associated with it.  *Id*. at 330. For United to be liable under one of the Name Appropriation Claims, United must have appropriated to its own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name.  *Id*. An appropriation generally becomes actionable when the plaintiff's name is used to advertise the defendant's business or product, or for some similar commercial purpose. *Id*.

In response to the motion to dismiss, Johnson submitted an affidavit in which he testified that his employment with United terminated in January 2018 and that an attached Damage Tracker states that on March 22, 2018, Johnson failed to mark a streetlight cable on a street in Houston, Texas.  Johnson stated that to his knowledge, this Damage Tracker issued in Johnson's name is false because Johnson was no longer employed with United on that date.  Fobbs testified that he resigned his position at United on March 29, 2017, and that an attached Request Ticket states that Fobbs marked a location in Stafford, Texas on August 4, 2017.  Fobbs stated that to his knowledge, this Request Ticket is false because Fobbs was no longer employed with United on August 4, 2017.  Harrell testified that he was terminated from his position at United in October 2017, and that two attached

12

Request Tickets state that Harrell marked locations in Houston, Texas and Pearland, Texas at 9:29 a.m. on November 8, 2017. Harrell stated that to his knowledge, these Request Tickets are false because Harrell was no longer employed with United on November 8, 2017, and it was impossible for him to be marking locations in Pearland and Houston at the exact same time. The Former Employees did not address the elements of their Name Appropriation Claims in their response to the motion to dismiss. On appeal, they contend that "the parties presented proper evidence that [United] received monies based on [the Former Employees'] names and reputation." The Former Employees allege that United used the Former Employees' names to generate work tickets and received payment on these complete tickets. But, no evidence before the trial court showed that United appropriated any of their likenesses. Nor did any of evidence show that any of their names had a value associated with it. The Former Employees assert that United received monies based on the Former Employees' names and reputations and that United received payment based on the Locate Ticket Requests in question. Yet, none of the evidence the Former Employees submitted shows that any Locate Ticket Request or Damage Tracker with any of their names on it was ever given to any client of United. Aaron Gibbs, the General Manager of United testified in an affidavit attached to the motion to dismiss that "Locate Request Tickets and Damage Trackers are used by and communicated to various personnel and supervisors within United in the regular course of business." Gibbs also stated that "[t]hese documents also may be shared — and in fact have been shared — with the United customer who requested the utility locating service or reported the damage at issue in the specific Locate Request Ticket or Damage Tracker." Though Gibbs stated that these documents may be shared and that some of the document have been shared with the United customer, Gibbs did not testify that any specific documents, including the documents mentioned in the Former Employees'

13

affidavits, had been shared with a United customer. None of the evidence United submitted shows that any Locate Ticket Request or Damage Tracker containing the name of one of the Former Employees was ever given to any client of United. The recent court of appeals opinions that address invasion of privacy by appropriation of name or likeness show that the Former Employees did not establish by clear and specific evidence a prima facie case for this claim. In *Watson v. Talia Heights, LLC*, we reviewed a trial court's no-evidence summary judgment dismissing a name appropriation claim in a case in which the plaintiff (Watson) argued that the defendant's use of his name in certain real estate transactions allowed the defendant to benefit from the plaintiff's relative anonymity in the real estate business thereby permitting the defendant to "underhandedly 'lock-up' valuable real estate properties for development." 566 S.W.3d 326, 329–31 (Tex. App.—Houston [14th Dist.] 2018, no pet.). This court concluded that Watson failed to show that alleged misuse of Watson's name had "anything to do with [his] unique skills or reputation," and that the name was interchangeable with any other "anonymous" individual. *Id*. The *Watson* court determined that the plaintiff had failed to present any evidence raising a fact issue as to whether the defendant appropriated the plaintiff's name for the value associated with it. *See id.*

In *Cardiovascular Provider Res. Inc. v. Gottlich*, the plaintiff alleged that the defendant appropriated the plaintiff's name by including it in an investor list. *See* No. 05-13-01763-CV, 2015 WL 4914725, at *3–4 (Tex. App.—Dallas Aug. 18, 2015, pet. denied) (mem. op.). The court of appeals concluded that the evidence was legally insufficient to support a name appropriation claim based on the defendant's alleged benefit from the value associated with plaintiff's name because plaintiff had the unique qualifications to be a listed investor in that he had a license to practice medicine in Texas and privileges to perform cardiac and

14

vascular surgery at Baylor Hospital. *See id*. The court of appeals concluded that for purposes of the investor list no evidence showed that the plaintiff's name had unique value, and that the plaintiff's name could have been replaced by anyone else's name having the same criteria, and so any benefit defendant received from the transaction could not be traced back to value added by the plaintiff's name. *Id*.

Like the plaintiffs in *Watson* and *Gottlich*, the Former Employees fall short in showing the value associated with their names. No evidence before the trial court would support a finding that any of the Former Employees' names has a value associated with it. To the extent, that an underground utility locator named on a locator ticket must be qualified by some training, education, or experience, the Former Employees have failed to show what those qualifications are, much less any details about any of the Former Employees that would give any other value to their names. Because none of the Former Employees established by clear and specific evidence a prima facie case for the first essential element of their Name Appropriation Claims, the trial court erred in denying the motion to dismiss as to these claims. *See Watson*, 566 S.W.3d at 329–31; *Gottlich*, 2015 WL 4914725, at *3–4.

**2. Defamation Claims**

In the Former Employees' defamation claims against United, the essential elements include the following: (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, and (3) the defendant either acted with actual malice or negligently, depending on the requisite degree of fault. *See ExxonMobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017); *Fawcett v. Grosu*, 498 S.W.3d 650, 661 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

In their petition the Former Employees alleged that "[United] made

defamatory statements in writing." They alleged that "[United] falsely stated, that the Plaintiffs were completing and closing out jobs and were causing damages because the locating was done incorrectly," and that United "falsely charged damage tickets to the former employee." In their response, they only submitted evidence of a single alleged defamatory publication as support for their contention that United was making statements that the locators were "causing damages because the locating was done incorrectly," a Damage Ticket naming Rodney Johnson as the locator assigned to locate underground utilities at a site where underground utilities had been struck. Harrell and Fobbs offered no evidence of any defamatory statement allegedly made by United on any Damage Tracker. "Publication" occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is "capable of understanding their defamatory import and in such a way that the third person did so understand." *ExxonMobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). As a general rule a defendant who communicates a defamatory statement directly to the defamed person, who then relays it to a third person, has not published the matter to the third person. *See id.*

None of the evidence the Former Employees submitted shows that any Locate Ticket Request or Damage Tracker containing any of their names was ever given to any United customer. Aaron Gibbs, the General Manager of United testified in an affidavit attached to the motion to dismiss that "Locate Request Tickets and Damage Trackers are used by and communicated to various personnel and supervisors within United in the regular course of business." Gibbs also stated that "[t]hese documents also may be shared — and in fact have been shared — with the United customer who requested the utility locating service or reported the damage at issue in the specific Locate Request Ticket or Damage Tracker."

Though Gibbs stated that these documents may be shared and that some of the document have been shared with the United customer, Gibbs did not testify that any specific documents, including the documents mentioned in the Former Employees' affidavits, had been shared with a United customer. None of the evidence United submitted shows that any Locate Ticket Request or Damage Tracker with any name of one of the Former Employees on it was ever given to any United customer.

Johnson testified in his affidavit that he had attached to the affidavit "a damage claim # 16795 dated March 22, 2018 and it states that I Rodney Johnson, failed to mark the streetlight cable on Ashford Oak Dr. in Houston Texas on March 22, 2018. To my knowledge this damage claim ID #16759 issued in my name is false because I was no longer employed with United Locating Services on this date." Even if we presume that United communicated this Damage Tracker to various personnel and supervisors within United in the regular course of business, no evidence before the trial court shows that the statements regarding Johnson in this document were communicated to a third person who was capable of understanding the defamatory import of one of these statements and in such a way that the third person understood the defamatory import of any of these statements. *See Rincones*, 520 S.W.3d at 579. Thus, none of the Former Employees established by clear and specific evidence a prima facie case for the publication element of their defamation claims, and for this reason, the trial court erred in denying the motion to dismiss as to the defamation claims. *See id*.

*Showing that Defendant Acted with Actual Malice or Negligently*

The Former Employees alleged that United intentionally placed their names on Locator Request Tickets and Damage Trackers, but they provided no evidence to support the allegation. The Former Employees presented no clear and specific

17

evidence of actual malice or negligence. No evidence before the trial court demonstrated a prima facie showing that United made any statement concerning any of the Former Employees with knowledge that it was false or with reckless disregard of whether it was true. Nor was there any evidence demonstrating a prima facie showing that United failed to investigate the truth or falsity of any statement concerning the Former Employees or failed to act as a reasonably prudent actor. No evidence shows that United made any false statement of fact concerning any of the Former Employees with negligent regard for the truth. Thus, none of the Former Employees established by clear and specific evidence a prima facie case that United acted with actual malice or negligently, and for this reason, the trial court erred in denying the motion to dismiss as to the defamation claims. *See Fawcett v. Grosu*, 498 S.W.3d 650, 662, 663 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding that as to defamation claim, plaintiff failed to establish by clear and specific evidence a prima facie case that the defendant acted negligently).

## C. Were the trial court's "Additional Findings" proper?

Under its first issue, United challenges the trial court's "Additional Findings" issued after United requested findings of fact and conclusions of law, and contends the findings are not supported by legally or factually sufficient evidence. In the challenged "additional findings," the trial court made findings on the issues stated in former section 27.007 of the Texas Civil Practice and Remedies Code. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.007). The trial court found that "[t]he Former Employees] did not bring their legal action to deter or prevent United from exercising constitutional rights" and that the Former Employees "did not bring their legal action for an improper

18

purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation." To the extent that either of these findings conflicts with our analysis about as to the TCPA's applicability and each of the Former Employees' failure to establish by clear and specific evidence a prima facie case for each essential element of his two claims, we disregard and set aside each finding.

## D. Did the trial court abuse its discretion in failing to award attorney's fees, costs, and sanctions?

When a trial court dismisses a claim under the TCPA, the statute requires the trial court to award to the movant "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require," as well as "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962-63 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)). Because the trial court erred in denying United's motion to dismiss as to the Former Employees' claims, the trial court erred in failing to (1) award United court costs, its reasonable attorney's fees and other expenses incurred in defending against the Former Employees' claims as justice and equity may require, and (2) impose sanctions sufficient to deter the Former Employees from bringing similar actions. *Id*.

## III. CONCLUSION

United established that the TCPA applies to the Former Employees' defamation and Name Appropriation Claims. None of the Former Employees established by clear and specific evidence a prima facie case for each essential element of either of these claims. We therefore sustain United's two issues, reverse

the trial court's order denying United's motion to dismiss, and remand the case for the trial court (a) to determine the amount of reasonable attorney's fees, court costs, and sanctions to award to United, (b) to determine the extent to which justice and equity require an award to United of "other expenses incurred in defending against the legal action," and (c) to render a judgment making such awards and dismissing the Former Employees' claims with prejudice.

/s/     Randy Wilson
         Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson (Bourliot, J. dissenting without opinion).