# Supreme Court of Texas

No. 21-0437

USA Lending Group, Inc.,

*Petitioner*,

v.

Winstead PC and James Ruiz,

*Respondents*

On Petition for Review from the
Court of Appeals for the Twelfth District of Texas

**Argued March 21, 2023**

JUSTICE BLAND delivered the opinion of the Court.

The Texas Citizens Participation Act's stated objective is to safeguard constitutional rights while permitting meritorious lawsuits to go forward. To achieve this, the Act requires early dismissal of qualifying legal actions when the plaintiff lacks evidence of any essential element of its claim. The Act describes this evidence as the "prima facie case." The prima facie case is the measurement the Legislature selected to distinguish genuine claims from suits brought to harass or silence. It is not a high hurdle. Rather, it is that minimum

quantity of evidence necessary to rationally infer that an allegation is true.

In this legal malpractice case, a client sued its former law firm, claiming that the law firm neglected to request monetary damages in a motion for default judgment. The failure to do so, the client claims, proximately caused it the loss of those damages. Assuming that the Act covers the claim at issue, we hold that the client presented prima facie evidence sufficient to survive a motion to dismiss. Because the court of appeals held differently, we reverse its judgment and remand the case to the trial court.

## I

Petitioner USA Lending Group, Inc. hired Respondent Winstead PC to sue USA Lending's former employee for breach of fiduciary duty. In its complaint to the United States District Court for the Western District of Texas, USA Lending alleged that it directed Mike Ahmari to acquire domain names and toll-free phone numbers for USA Lending to support its new home-mortgage program. When Ahmari resigned, USA Lending discovered that he had acquired the assets in his own name rather than in USA Lending's.[1] USA Lending's chairman and CEO avers that Ahmari used the assets to benefit a competitor, All Home Lending, Inc., controlled by Ahmari or his wife. In the federal court lawsuit, USA Lending sought a declaratory judgment

---

[1] Though USA Lending's complaint references multiple domain names and telephone numbers, in its motion for default judgment USA Lending sought a declaration of its ownership of only the www.usalend.com domain name and the 800-USA-LEND toll-free phone number.

that it is the rightful owner of the assets and "actual and exemplary damages."

Ahmari failed to answer USA Lending's suit. As a next step, Winstead drafted a motion for default judgment and prepared an accompanying affidavit for USA Lending's CEO. The draft affidavit included a blank for USA Lending to supply a figure representing lost profits attributable to Ahmari's wrongful conduct. The CEO filled in the blank with "$1,000,000.00." Winstead and USA Lending later revised the affidavit to create a table showing lost income attributable to the wrongfully acquired domain name and phone number over four years, with total lost income alleged to be $1,285,000.

Winstead eventually revised the affidavit a third time. Unlike earlier versions, the final version omits a claim for lost income, a revision that USA Lending denies approving. Winstead attached this version to the motion for default judgment. It requested no relief other than a declaration that USA Lending owns the domain name and phone number. The federal district court entered judgment for USA Lending accordingly. It did not award money damages.

Upon discovering the omission of money damages from the judgment, USA Lending sued Winstead and its attorney James Ruiz in Harris County state court, seeking over $1,000,000 in damages. USA Lending alleges that Winstead's malpractice caused USA Lending to forfeit its claim for monetary damages against Ahmari in the federal court suit:

> In the process of securing a default judgment against Ahmari, Ruiz and Winstead without authority, permission, or with the knowledge of [USA Lending], dropped from

3

their motion any claim for monetary relief. As a result, [USA Lending] was caused to lose a damage claim in excess of $1,000,000 that would more likely than not been included in and ordered by the judgment.

Winstead moved to dismiss USA Lending's malpractice claim under the Texas Citizens Participation Act, stating that USA Lending's suit is based on Winstead's exercise of the right to petition. USA Lending responded that (1) the Act does not apply to Winstead's communications; (2) if the Act applies, then the commercial-speech exemption precludes dismissal; and (3) in any event, prima facie evidence supports each essential element of USA Lending's malpractice claim. The district court denied Winstead's motion, and Winstead appealed.

The court of appeals reversed.[2] First, it held that Winstead's motion for default judgment qualifies as a protected "communication" under the Act.[3] Second, the court held that the commercial-speech exemption does not apply because the motion for default judgment "did not arise out of the sale or solicitation of Winstead's legal services or a commercial transaction."[4] Finally, the court held that USA Lending failed to establish a prima facie case for legal malpractice. Though the court of appeals agreed that prima facie evidence exists that the alleged malpractice caused some damage, it rejected USA Lending's evidence that it could have collected a judgment against Ahmari as "not based on

---

[2] ___ S.W.3d ___, 2021 WL 1047208, at *1 (Tex. App.—Tyler Mar. 18, 2021).

[3] *Id.* at *3.

[4] *Id.* at *4.

4

demonstrable, reasonable facts."[5] We granted USA Lending's petition for review.

## II

## A

Under the Act, a trial court "shall dismiss a legal action against the moving party if the moving party demonstrates that the legal action is based on or is in response to . . . the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association."[6] The Act defines each of these rights expansively.[7]

A plaintiff survives a motion to dismiss under the Act if it "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."[8] Prima facie means "at first sight,"[9] and under the Act, is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true."[10] Evidence is "clear and specific" if it provides enough detail to

---

[5] *Id.* at *8–9.

[6] Tex. Civ. Prac. & Rem. Code § 27.005(b).

[7] *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 133–34 (Tex. 2019).

[8] Tex. Civ. Prac. & Rem. Code § 27.005(c).

[9] *Prima facie*, Garner's Dictionary of Legal Usage (3d ed. 2011).

[10] *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)).

5

show the factual basis for the claim.[11] Such evidence need not be conclusive, uncontroverted, or found credible.[12]

In ruling on a motion to dismiss under the Act, the trial court must consider evidence that a party could proffer in connection with a summary judgment motion, as well as "supporting and opposing affidavits stating the facts on which the liability or defense is based."[13] The Act does not contemplate extensive discovery.[14] In this case, none has occurred. Given the very preliminary stage of the case, "[n]either the court's ruling on the motion nor the fact that it made such a ruling shall be admissible in evidence at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by the ruling."[15]

---

[11] *In re Lipsky*, 460 S.W.3d at 590–91.

[12] *Id.* at 590 (observing that a prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted").

[13] Tex. Civ. Prac. & Rem. Code § 27.006(a) ("In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based."). Though the court shall consider the pleadings, they are not a substitute for clear and specific evidence of "each essential element of the claim in question." *In re Lipsky*, 460 S.W.3d at 590–91 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c)).

[14] *See* Tex. Civ. Prac. & Rem. Code § 27.003(c) (halting discovery upon filing of a motion to dismiss under the Act); *but see id.* § 27.006(b) (permitting the court to allow "specified and limited discovery relevant to the motion" on a showing of good cause within the allotted time frame).

[15] *Id.* § 27.0075.

We review de novo whether the Act applies, and if so, whether prima facie evidence exists to support each element of the claim.[16] Because we conclude that USA Lending has adduced sufficient prima facie evidence to support its malpractice claim, we need not determine whether its legal action was based on Winstead's exercise of the right to petition. We express no views on that aspect of the court of appeals' opinion.

## B

A plaintiff claiming legal malpractice must prove that the defendant breached a duty it owed to the plaintiff and proximately caused the plaintiff an injury.[17] If the plaintiff asserts that an attorney's negligence resulted in the denial of actual damages, then the plaintiff must also prove, in reasonable probability, that it would have collected those damages in the underlying case.[18]

Winstead challenges two elements of USA Lending's prima facie case: causation and damages. It argues that the prima facie evidence does not show that a breach of the standard of care caused USA Lending actual damages. Further, Winstead contends that USA Lending provided insufficient evidence that it would have collected a money judgment from Ahmari even if the court had awarded actual damages. The court of appeals held that prima facie evidence supports USA

---

[16] *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021).

[17] *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 112 (Tex. 2009).

[18] *Id.*

Lending's claim that a breach caused it some damages but not that it would have collected that amount from Ahmari.[19]

In response to Winstead's motion to dismiss, USA Lending proffered an affidavit from its CEO, as well as three expert affidavits. These affidavits address the standard of care, breach, damages, and collectibility. USA Lending's CEO avers that he retained Winstead to sue Ahmari for diverting ownership of USA Lending's domain name and telephone number for Ahmari's personal use or for the use of "other companies including, but not limited to All Home Lending, Inc."

The CEO avers that he and Winstead agreed that the firm would seek monetary damages in the motion for default judgment and that he provided affidavits to the firm to support that request. The CEO discovered Winstead's failure to request money damages only after the federal court signed the default judgment. As the custodian of records for USA Lending, the CEO asserts that USA Lending's business records demonstrate that the "amount of expenses, fees, and other out of pocket costs incurred or expended" exceeds $1,200,000. He attached financial records, only some of which are in USA Lending's name. The records are undifferentiated and voluminous, but a review shows funds transferred from USA Lending to Ahmari, including a check for $32,783.83 dated February 5, 2013, and two transfers totaling $31,841.59 on March 13, 2013.

On causation, USA Lending's first expert, a retired state judge, avers that a reasonably prudent lawyer would have followed the client's

---

[19] 2021 WL 1047208, at *9–10.

instructions to seek monetary damages in connection with a default judgment. Had Winstead sought damages, the expert avers, then "more likely than not, the default judgment rendered in USA Lending's favor would have included judgment for damages represented by USA Lending's out of pocket costs and expenses as described and attested to in the affidavit of the CEO."

As to the likelihood that USA Lending would have collected damages on a judgment against Ahmari, a California resident, USA Lending proffered the testimony of a second expert, a California lawyer. Under California law, the expert concludes that it was "reasonably likely" that, had the judgment rendered against Ahmari included an award of actual damages, it could have been collected from assets that "Ahmari held." Those assets include community property or assets Ahmari fraudulently transferred either to his wife or to All Home Lending, an entity controlled by Ahmari's wife. According to the expert's affidavit, records from the California Secretary of State show that Ahmari's wife "is listed on publicly available California Secretary of State records as the . . . President, CFO, and Secretary" of All Home Lending, and that the company "was acquired" in 2012, around the time that Ahmari began working for USA Lending.

The third expert, a Texas attorney, avers that public records indicate that All Home Lending was a Federal Housing Administration Approved Mortgagee, requiring a minimum net worth of at least $1,000,000.

## C

Under the Act, "the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct."[20] A general averment of loss, like any conclusory opinion, is not sufficient.[21] For example, in *In re Lipsky*, we rejected the plaintiff's general averment that it had sustained "direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill . . . in excess of three million dollars."[22] We criticized the affidavit as "devoid of any specific facts illustrating how [the defendant's] alleged remarks about [the plaintiff's] activities actually caused such losses."[23]

We contrasted the insufficient evidence in *Lipsky* with the sufficient evidence adduced in *S&S Emergency Training Solutions, Inc. v. Elliott*.[24] In that case, a provider of emergency medical training sued its former employee, alleging that her breaches of nondisclosure agreements caused the provider to be unable to offer accredited training under a consortium agreement.[25] In her motion to dismiss under the Act, the former employee argued that the provider could not establish its damages. We observed that the provider "was not required to provide

---

[20] *Elliott*, 564 S.W.3d at 847.

[21] *In re Lipsky*, 460 S.W.3d at 592–93.

[22] *Id.* at 592.

[23] *Id.* at 593.

[24] 564 S.W.3d at 848.

[25] *Id.* at 845.

evidence sufficient to allow an exact calculation of the lost profits."[26] Instead, "it was only required to present evidence sufficient to support a rational inference that [the employee's] actions caused it to lose *some* specific, demonstrable profits."[27] The provider did so by adducing a record demonstrating that the "lost revenues were susceptible to calculation with reasonable certainty."[28]

The facts in this case align with those in *Elliott*. USA Lending's causation expert avers that the company's out-of-pocket costs and expenses would more likely than not have been awarded in a default judgment. USA Lending's evidence of out-of-pocket expenses includes those it incurred in acquiring and maintaining the domain name and toll-free number during the time Ahmari deprived USA Lending of their use.[29] The expert testimony, combined with the existence of demonstrable out-of-pocket expenses, establishes that USA Lending suffered *some* specific, demonstrable injury attributable to Winstead's conduct. Accordingly, we agree with the court of appeals that USA

---

[26] *Id.* at 848.

[27] *Id.*

[28] *Id.*

[29] Exhibits attached to the motion for default judgment support USA Lending's outlay of $5,000 to acquire the domain www.usalend.com and an outlay of $3,150.50 related to the acquisition and operation of the toll-free phone number. The amounts paid to maintain the phone number after Ahmari's resignation appear to be trifling ($21.49 over three months). The record contains a midden of other business records, some for an entity called USA Lend Cash LLC, which may or may not support USA Lending's additional theories of damages.

11

Lending presented prima facie evidence that the failure to request money damages caused it some injury.[30]

Winstead responds that USA Lending's assertion of over $1,000,000 in malpractice damages is conclusory. To make a prima facie case under the Act, however, plaintiffs need not prove the entirety of their damages with specificity.[31] It is enough that USA Lending has evidence supporting the inference that Winstead's actions caused it to lose "*some* specific, demonstrable" amount.[32] The costs expended to acquire and maintain the domain name and telephone number, along with the amounts it transferred to Ahmari, are some evidence that USA Lending could have shown the federal court to receive a judgment for monetary damages.

Winstead also argues that the default judgment awarded USA Lending ownership of the domain name and telephone number, and thus recovery of the out-of-pocket expenses incurred to acquire the assets is duplicative relief. At least some of the expenses attached to the motion for default judgment, however, show that USA Lending continued to pay for the use of the toll-free number both before and after Ahmari resigned. USA Lending's outlays to maintain an asset while a competitor held it are separate alleged losses not compensated by the eventual return of the assets.

---

[30] *See* 2021 WL 1047208, at *7.

[31] *Elliott*, 564 S.W.3d at 848.

[32] *See id.*

Winstead will have opportunities to contest the proposition that the district court would have awarded monetary damages. Under the Act, however, prima facie evidence is taken at face value.[33] At this phase of the proceedings, the evidence supports a rational inference causally connecting Winstead's conduct to a specific, demonstrable injury.

**D**

Winstead next challenges USA Lending's expert affidavit as speculative in concluding that it was "reasonably likely" that USA Lending could have collected monetary damages from Ahmari, had USA Lending obtained such a judgment. We have said that "collectibility must be proved; it is not presumed."[34]

USA Lending's CEO avers that Ahmari used USA Lending's domain name and toll-free telephone number to benefit All Home Lending, Inc., a California lender. Circumstantial evidence in the default judgment record supports this allegation: invoices categorized entries from June 2013 to November 2013 as "Rec-All Home." Relying in part on the CEO's affidavit and public records, USA Lending's second expert avers that Ahmari's wife is publicly identified as All Home Lending's President, Chief Financial Officer, and Secretary. The expert also referred to a June 24 email not present in the record. The expert avers that this email is from Ahmari to USA Lending's CEO, seeking an investment in All Home, in which Ahmari claimed to exercise some

---

[33] *See In re Lipsky*, 460 S.W.3d at 590 (giving "prima facie case" its "traditional legal meaning" of referring to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted").

[34] *Akin, Gump*, 299 S.W.3d at 115.

control over the entity. The expert noted that the Ahmaris appear to have acquired All Home Lending in 2012, approximately the time that Ahmari was supposed to be creating a similar home mortgage business for USA Lending. From these specific facts, the expert opined that either Ahmari or his wife owned, or at least controlled, All Home Lending. Applying California community property and fraudulent transfer laws, the expert further concluded that it was likely that USA Lending could collect a judgment against Ahmari through All Home Lending's assets or against any salary his wife drew from the company.

A third expert assembled evidence of the assets of All Home Lending. Relying on publicly available reports from federal agencies and minimum net-worth regulations, the expert concluded that All Home Lending had "assets of at least $1,000,000 . . . for almost two full years post judgment."

Though Winstead may demonstrate that the experts' conclusions do not support USA Lending's claim because they prove to be incredible, unreliable, countered, or outweighed by legal defenses or other evidence, we conclude that USA Lending met the minimum requirement for a prima facie case of collectibility. Some circumstantial evidence and expert opinion support an inference that Ahmari used assets paid for by USA Lending to further the interests of All Home Lending, an entity with evidence of assets against which a judgment could be collected under fraudulent transfer laws. Additionally, some evidence supports the expert's conclusion that Ahmari's wife, as an owner or salaried employee, had assets reachable under California community property laws.

The court of appeals concluded that the evidence of collectibility rested on too many assumptions, such as the assumption that Ahmari or his wife owned All Home Lending and that no pre- or post-nuptial agreement affected its ownership.[35] These assumptions may well be undercut by evidence adduced at a future juncture. The expert addressed the assumptions, however, by opining that California fraudulent transfer laws prevent the diversion of assets and that public records demonstrate that Ahmari's wife controls that company. A prima facie case eventually may be controverted. At this stage, however, a claim survives if the evidence "is legally sufficient to establish a claim as factually true if it is not countered."[36]

Though circumstantial and subject to counterattack, USA Lending presented sufficient evidence to rationally infer that a judgment could have been collected against Ahmari's community property or against All Home Lending as the recipient of a fraudulent transfer. The experts' assumptions, as yet unproven, are susceptible of proof and based on untested, specific facts that are available at this early stage of the proceedings: (1) that Ahmari used USA Lending's assets to benefit a competitor company operated by his wife; (2) that Ahmari claimed to control USA Lending; (3) that Ahmari's wife is publicly identified as an officer of All Home Lending; and (4) that All Home Lending, at the relevant time after judgment, satisfied federal net-worth minimums.

---

[35] 2021 WL 1047208, at *9.

[36] *Elliott*, 564 S.W.3d at 847.

Finally, Winstead complains that the affidavits lack specificity regarding the process for domesticating a judgment in California and any defenses to enforcement. Though discovery may bear out such concerns, the Full Faith and Credit Clause of the United States Constitution supplies sufficient guarantee, for this stage of the proceedings, that a judgment in one state may be enforced in another.[37] The Act permits a moving party to overcome the prima facie case by establishing grounds on which it is entitled to judgment as a matter of law.[38] Winstead did not seek to establish that a defense to the judgment defeated its enforcement in California.

\*　　\*　　\*

---

[37] U.S. Const. art. IV, § 1.

[38] Tex. Civ. Prac. & Rem. Code § 27.005(d) ("[T]he court shall dismiss a legal action against the moving party if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law.").

16

The motion to dismiss stage is not a battle of evidence; it is the clearing of an initial hurdle.[39] The Act does not select for plaintiffs certain to succeed; it screens out plaintiffs certain to fail—those who cannot support their claims with clear and specific evidence.[40]

Because USA Lending adduced prima facie evidence to support its claim for legal malpractice, the court of appeals erred in ordering the case dismissed. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court.

_____

Jane N. Bland
Justice

**OPINION DELIVERED:** May 19, 2023

---

[39] *See In re Lipsky*, 460 S.W.3d at 589 ("That the [Act] should create a greater obstacle for the plaintiff to get into the courthouse than to win its case seems nonsensical.").

[40] *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).