**Opinion issued July 23, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00026-CV

_____

**CARL JOINER, Appellant**

**V.**

**MATT WIGGINS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 21-CV-2082**

---

## MEMORANDUM OPINION

Appellant Carl Joiner sued appellee Matt Wiggins for defamation. Wiggins subsequently moved for no-evidence summary judgment on the ground that there was no evidence of falsity or malice, and the trial court granted the motion. On appeal, Joiner argues that the trial court erred by granting the no-evidence motion

for summary judgment because he raised genuine issues of material fact regarding both (1) the falsity of the statement at issue and (2) whether Wiggins acted with actual malice. Because we conclude that Joiner raised a genuine issue of material fact on both challenged elements, we reverse and remand for further proceedings.

## Background

Joiner, the mayor of Kemah, Texas, was the incumbent re-elected to office in May 2021. Wiggins was also a candidate in the 2021 mayoral election. During the election, Wiggins created a billboard that stated, "Carl Joiner pleaded guilty to spending public funds for political advertising" and referenced Texas Ethics Commission (TEC) case number SC-31605137. He used an identical statement on other signs.

The TEC case number identified in the billboard involved an ethics complaint against Joiner that arose while he was mayor of Kemah in connection with a ballot measure pertaining to the City of Kemah. The TEC issued an "Order and Agreed Resolution" resolving the ethics complaint (the TEC Order). The TEC Order recounted the allegations that Joiner "spent or authorized the spending of public funds for political advertising," and affirmatively stated that Joiner denied the allegations. The TEC Order described the ballot measure as determining "whether to change the city from [its] current Mayor-Council form of government to a Council-Manager form of government." The TEC identified the

2

"communication at issue" as a newsletter titled "From the Desk of the Mayor" that the TEC believed "oppose[d] the measure and therefore constitute[d] political advertising."

The TEC Order stated that "the [Ethics] Commission determined that there is credible evidence of a violation of section 255.003(a)[1] of the Election Code, a law administered and enforced by the Commission." The Order further recognized that Joiner "acknowledged that the city newsletter at issue involved the use of public resources such as paper, staff time, city equipment, and postage," but he "denied the allegations [of use of public funds for political advertising] and stated that the communications did not advocate the passage or defeat of the measure." The TEC Order further stated, "To resolve and settle this complaint without further proceedings, the Commission proposed this resolution to [Joiner]." Joiner agreed to comply with ethics requirements, and the TEC further imposed "a $500 civil penalty." However, the TEC Order also contained the following "representation" by Joiner: "The respondent neither admits nor denies the facts described [in the order] or the Commission's findings and conclusions of law described [above], and consents to the entry of this order and agreed resolution solely for the purpose of resolving this sworn complaint."

---

[1]    *See* TEX. ELEC. CODE § 255.003(a) (providing that officer or employee of political subdivision may not knowingly spend or authorize spending of public funds for political advertising).

3

Joiner sued Wiggins for defamation in connection with the billboard statement that he "pleaded guilty" to spending public funds for political advertising. In his petition, Joiner referenced the TEC Order and asserted that the billboard statement's "reference to the TEC finding and how [Joiner] 'pleaded guilty' when compared with the actual TEC finding [is] completely false and probably untrue." Joiner asserted that the TEC Order stated that he had denied the allegations of spending public funds for political advertising. Furthermore, the TEC Order contained the statement that Joiner "neither admits nor denies the facts . . . or the Commission's findings and conclusions of law . . . and consents to entry of this order and agreed resolutions solely for the purpose of resolving this sworn complaint." Joiner thus alleged that Wiggins's statement that Joiner "pleaded guilty" to using public funds on political advertising was false because he never pled guilty and because the language of "pleaded guilty" inferred theft or criminal liability that did not accurately reflect the TEC Order. Joiner further alleged that Wiggins made the statements with knowledge of their falsity or with reckless disregard of the truth, referencing the fact that the billboard and sign recited the TEC cause number, indicating that Wiggins was aware of the proceedings that had actually occurred, and the related TEC Order was public information that contradicted Wiggins's statement.

Wiggins moved for no-evidence summary judgment on this claim. Wiggins asserted that "Joiner cannot prove that the complained of statement [was] false for purposes of a defamation lawsuit." Wiggins argued that the gist of the communication was substantially true. Wiggins further asserted that Joiner could not prove that Wiggins made the statement with actual malice. Thus, he asserted, Joiner "has not and cannot produce evidence to satisfy the essential element of actual malice in this case."

Joiner responded that there were genuine issues of material fact precluding summary judgment as to both the falsity of the billboard statement and to Wiggin's actual malice. Joiner cited the TEC Order from the case that Wiggins referenced on the billboard, arguing that the Order expressly stated that he neither admitted nor denied any of the allegations and only accepted a civil fine as settlement under agreement. Joiner further asserted that the language of the TEC Order raised some evidence indicating that Wiggins had actual knowledge that the representation in the billboard was false, and, thus, "the reckless disregard as to the truth was intentional and done for political purposes." Joiner argued that Wiggins "improperly seeks to escape maliciousness by claiming he had no 'serious doubts as to the truth' about the [billboard statements] and/or [the statements] are an 'understandable misrepresentation.'" Joiner argues that "there are fact issues about these claims because Wiggins has stated under oath that he researched the [TEC

5

Order] and still claims that the Signs were meant to mean something that they simply did not say."

As summary judgment evidence, Joiner included the TEC Order and pictures of the billboard and other signs printed with the same statement. He also presented the declaration of Luanna Lathrop, a resident of Kemah who saw the sign and "was taken aback from seeing this billboard, as [she] was not aware that Carl Joiner had committed any crimes." She declared that she researched and "found out that no crime was committed" and no guilty plea was entered, and she "found this to be completely different and have a totally different meaning tha[n] what the billboard said." She also stated that the billboard had a negative impact on Joiner's reputation in the community.

Joiner presented his own affidavit relating his knowledge of the events, including that he "did not admit any wrong doing, and did not admit the allegations." Joiner further averred that Wiggins had refused to remove the billboard even after Joiner won the mayoral election, and Wiggins also had "portable signs circulated" at events Joiner attended as mayor, leaving attendees "to read these signs and believe [he is] a criminal."

Finally, Joiner also provided the transcript from Wiggins's deposition. This included Wiggins's testimony that he had not read the TEC report "really good" but he had access to it online and read through it before he put the signs up. When

asked to identify where the report indicated that Joiner had pled guilty, Wiggins—who testified that he was an attorney—stated that "Mr. Joiner agreed to pay $500," later testifying that the payment of the fine meant Joiner "effectively pleaded guilty."

The trial court signed an order granting Wiggins's no-evidence motion for summary judgment and dismissing Joiner's defamation claim with prejudice.[2] This appeal followed.

## Summary Judgment on Defamation Claim

In two issues, Joiner argues that the trial court erred in granting summary judgment because he presented evidence raising a genuine issue of material fact precluding summary judgment on both the issues of falsity and actual malice.

### A.    Standard of Review

We review a trial court's summary judgment ruling de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which an adverse party would bear the burden of proof at trial. TEX. R. CIV. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a

---

[2]    The order contained a handwritten notation that "Defendant is precluded from erecting any future billboards in regards to 'attack ads' on Plaintiff."

7

genuine issue of material fact on the challenged elements. *Id.*; *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

A fact issue exists if more than a scintilla of evidence establishes the existence of the challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when "the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* at 601 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). In reviewing a summary judgment ruling, "we examine the evidence in the light most favorable to the non-moving party, indulging reasonable inferences and resolving doubts against the party seeking summary judgment." *Helena Chem. Co.*, 664 S.W.3d at 73.

## B.    Defamation Law

The elements of defamation "include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *see Anderson v. Durant*, 550 SW.3d 605, 617–18 (Tex. 2018).

The first element of defamation is the publication of a false statement of fact to a third party. *Lipsky*, 460 S.W.3d at 593. "Establishing the falsity of an allegedly defamatory article is not as simple as showing that the article contains a statement

that falls short of literal truth." *Polk Cnty. Publ'g Co. v. Coleman*, 685 S.W.3d 71, 76 (Tex. 2024). "A statement need not be perfectly true; as long as it is substantially true, it is not false." *Id.* (quoting *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016)). Courts do not assess the substantial truth of a statement by "merely asking whether one statement plucked from a lengthy article is true or false"; instead, "the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Id.* (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). A statement is substantially true if its "gist" is correct, regardless of whether it "err[s] in the details." *Id.* (citing *Dall. Morning News v. Tatum*, 554 S.W.3d 614, 629 (Tex. 2018), and *Neely v. Wilson*, 418 S.W.3d 52, 63–64 (Tex. 2013)); *see Toledo*, 492 S.W.3d at 714 (holding that substantial truth may be measured by whether report "taken as a whole is more damaging to the plaintiff's reputation than a truthful [report] would have been").

"Identifying the gist of an allegedly defamatory publication is a question of law for the court." *Coleman*, 695 S.W.3d at 76–77; *see Turner*, 38 S.W.3d at 114 ("Whether a publication is capable of a defamatory meaning is initially a question for the court."). We determine a statement's "gist or meaning by examining how a person of ordinary intelligence would view it." *Coleman*, 695 S.W.3d at 77

9

(quoting *Neely*, 418 S.W.3d at 64). "This inquiry is objective and asks how a 'hypothetical reasonable reader' would understand the article, not how any particular reader actually understood it." *Id.* (quoting *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004)).

Regarding the third element, we determine the requisite degree of fault based on the status of the person allegedly defamed: "A private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Lipsky*, 460 S.W.3d at 593 (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). "Actual malice" in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *Lipsky*, 460 S.W.3d at 593 (citing *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex.2000)).

"Knowledge of falsehood is a relatively clear standard; reckless disregard is much less so." *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002). Reckless disregard focuses on the defendant's state of mind; the plaintiff must show that the defendant "entertained serious doubts as to the truth of his [statement]." *Id.* (quoting *Huckabee*, 19 S.W.3d at 420, and *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

"[A] defendant's state of mind can—indeed, must usually—be proved by circumstantial evidence." *McShirley v. Lucas*, No. 02-23-00229-CV, 2024 WL

10

976512, at *8 (Tex. App.—Fort Worth Mar. 7, 2024, no pet.) (mem. op.) (citing *Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *15 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.), and quoting *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003) (internal quotation marks omitted)). For example, evidence that the defendant purposefully avoided the truth is evidence of actual malice. *Id.* (citing *Forbes*, 124 S.W.3d at 171). Evidence that a story has been fabricated, or discrepancies between the parties' accounts of events, may also be evidence that the defendant acted with actual malice. *Id.* Furthermore, while an injurious motive is not determinative of actual malice, it is another factor that may be considered. *Id.*; *see Bentley*, 94 S.W.3d at 597. "The defendant's self-serving protestation of sincerity in making the statement does not negate proof of actual malice." *Bentley*, 94 S.W.3d at 596.

## C.     Analysis

Joiner asserts that he presented sufficient evidence to raise a genuine issue of material fact as to the elements of falsity and actual malice. We agree.

### 1.     *Evidence of falsity*

We begin by construing the "gist" or general meaning conveyed by the billboard statement. *See Coleman*, 695 S.W.3d at 76–77 (holding that identifying gist is question of law for court). Considering the billboard statement as a person of ordinary intelligence would view it, we conclude that the gist of the statement is

11

relatively straight-forward. *See id.* at 77. A "hypothetical reasonable reader" would interpret the statement that Joiner "pleaded guilty to spending public funds for political advertising" as meaning the Joiner admitted to misusing public funds for political advertising. *See id.*

Joiner presented evidence that, contrary to the billboard statement that he "pleaded guilty to spending public funds for political advertising," public records reflected that he denied the TEC's allegations against him. The TEC Order further stated Joiner "neither admit[ted] nor denie[d] the facts described [in the order] or the Commission's findings and conclusions of law described [in the order], and consent[ed] to the entry of this order and agreed resolution solely for the purpose of resolving this sworn complaint." In short, this document states that Joiner denied the allegations but settled the complaint by paying the $500 civil fine. Thus, Joiner presented evidence that the billboard statement was not literally true.

Wiggins argues that Joiner can present no evidence that the billboard statement was not substantially true. While we agree that "a statement need not be perfectly true" and that "as long as it is substantially true, it is not false," *id.* at 76, we conclude that Joiner's evidence raised a genuine issue of material fact as to whether the billboard statement was substantially true. Substantial truth may be measured by whether a statement "is more damaging to the plaintiff's reputation than a truthful [statement] would have been." *Toledo*, 492 S.W.3d at 714.

Construing the evidence in the light most favorable to Joiner, the nonmovant, as we must in a summary-judgment review, we conclude that reasonable minds could differ as to whether the statement that Joiner "pleaded guilty to spending public funds for political advertising" is more damaging to his reputation than a statement that he settled an ethics complaint by paying a civil fine. *See id.* (holding that substantial truth may be measured by whether report "taken as a whole is more damaging to the plaintiff's reputation than a truthful [report] would have been"); *see also Bentley*, 94 S.W.3d at 587 ("If the evidence is disputed, falsity must be determined by the finder of fact.").

Furthermore, we are mindful that a statement may be considered defamatory when facts, whether "literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner*, 38 S.W.3d at 115. Again, the evidence presented by Joiner in response to Wiggins's motion for summary judgment could permit reasonable minds to differ regarding whether the statement that Joiner "pleaded guilty"—implying criminal liability for misuse of public funds—created a substantially false and defamatory impression of the actual ethics proceedings.

We conclude that Joiner presented sufficient evidence raising a question of fact on the issue of falsity. We therefore sustain Joiner's first issue.

13

## 2.     *Evidence of actual malice*

Because Joiner is a public figure or official, he was required to provide some evidence raising a genuine issue of material fact regarding whether Wiggins made the billboard statement with actual malice. *See Lipsky*, 460 S.W.3d at 593 (holding that "actual malice" means that defendant made statement with knowledge of its falsity or with reckless disregard for its truth).

Joiner presented deposition transcripts indicating that Wiggins was an attorney and that he was aware of and had read the TEC Order prior to publishing the billboard statement. We conclude this is some evidence that Wiggins had actual knowledge that Joiner did not "plead guilty," but instead denied the ethics allegations and settled with the TEC to resolve the claims without further proceedings. *See id.*

Wiggins argues that Joiner cannot show that Wiggins acted with actual malice because Wiggins testified, in his deposition testimony, that he believed paying the $500 fee was the equivalent of pleading guilty. However, a defendant's self-serving protestation of sincerity in making the statement does not negate proof of actual malice. *See Bentley*, 94 S.W.3d at 596. We further observe that Wiggins's state of mind can be proved by circumstantial evidence. *See McShirley*, 2024 WL 976512, at *8. Thus, Wiggins's deposition testimony that he did not read the TEC Order thoroughly enough to learn that Joiner did not plead guilty but instead

denied the claims, and the discrepancy between what was stated in the TEC Order and what was published on the billboard, are some evidence that a fact-finder could consider in determining whether Wiggins acted with actual malice or reckless disregard for the truth of the statement. *See id.* (giving as examples of circumstantial evidence of reckless disregard evidence that defendant purposefully avoided truth or evidence of discrepancies between parties' accounts of events may be evidence with defendant acted with actual malice).

Accordingly, we conclude that Joiner presented sufficient evidence raising a question of material fact on the issue of actual malice. We therefore sustain Joiner's second issue. Because Joiner raised a genuine issue of material fact on both elements challenged in his no-evidence motion for summary judgment, we conclude that the trial court erred in granting the motion. *See* TEX. R. CIV. P. 166a(i); *Lightning Oil Co.*, 520 S.W.3d at 45.

## Conclusion

We reverse the order of the trial court granting Wiggins's motion for summary judgment and dismissing Joiner's defamation claim. We remand for further proceedings.

Richard Hightower
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

15